**LOGAN SQUARE AUTO MART, INC., and Logan Square Motors, Inc., Illinois corporations, James E. Healy and Elizabeth Healy, Estate of Alvin A. Urban, deceased, Orville E. Urban, executor thereof, Estate of Alyce Urban, deceased, and Orville E. Urban, executor thereof, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 13141.

United States Court of Appeals
Seventh Circuit.
May 22, 1961.
Rehearing Denied June 20, 1961.

---

Robert J. Downing, Robert G. Lussier, Chicago, Ill., Raskin & Downing, Chicago, Ill., of counsel, for petitioners-appellants.

Lee A. Jackson, Chief, Appellate Section, John A. Bailey, Atty., U. S. Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, Atty., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

The petitions for review of decisions of the Tax Court of the United States, filed by Logan Square Auto Mart, Inc., and Logan Square Motors, Inc., Illinois corporations, James E. Healy and Elizabeth Healy, Estate of Alvin A. Urban, deceased, Orville E. Urban, executor thereof, and Estate of Alyce Urban, deceased, and Orville E. Urban, executor thereof,[1] bring before us a redetermination by that court of income tax liability of the individuals and corporations named for the years 1946, 1947 and 1948.

In the Tax Court the dockets involved were consolidated and heard on a stipulation of facts, and documentary and oral evidence.

The corporate taxpayers filed income tax returns on an accrual basis for the years 1946, 1947 and 1948. Healy and Urban and their respective wives filed joint income tax returns for 1948.[2]

The corporate taxpayers were in the business of selling new and used automo-

---

[1]. The corporate petitioners will be referred to herein as Logan Square Auto Mart and Logan Square Motors, respectively.

Petitioner Alyce Urban died on October 28, 1957 and Alvin A. Urban, her husband, died the next day.

During the taxable years James E. Healy and Elizabeth Healy were husband and wife.

[2]. All events now stated occurred in each of the taxable years 1946, 1947, and 1948, unless otherwise indicated.

biles in Chicago. Urban and Healy each owned 50% of the capital stock of each corporate taxpayer, with the exception of January 1 to 10, 1946 in respect to Logan Square Motors, when they each owned one-third of its stock. Each of these men occupied some office in one or the other of the corporations, except that in 1946 Urban held no office in Logan Square Auto Mart and Healy held none in Logan Square Motors, at which time their stock was held by nominees.

The returns of Logan Square Auto Mart were signed by Healy and those of Logan Square Motors were signed by Urban.

Healy received salaries from Logan Square Auto Mart and Logan Square Motors as follows:

| Year | Logan Square Auto Mart | Logan Square Motors |
|------|------------------------|---------------------|
| 1946 | $12,000 | $ 1,075.00 |
| 1947 | 15,000 | ——— |
| 1948 | 3,125 | 19,324.66 |

Urban received from Logan Square Motors as salary the amounts of $12,000, $20,000 and $1,300 in each year respectively. The corporate taxpayers deducted, and Healy and Urban included on their respective returns, the amounts of salary so paid. On December 1, 1948, Logan Square Motors declared a dividend on its common stock in the amount of $20,000, of which $10,000 was paid to Healy, and $10,000 to Urban. The payment of the dividend was reflected in a schedule, attached to the corporate return, as a charge to earned surplus. Healy and Urban reported the dividend on their respective 1948 income tax returns. Healy, Urban and their wives reported no other amounts as income for the years in issue. Both Logan Square Motors and Logan Square Auto Mart maintained their books and records on an accrual method.

Walter J. Smyth, employed by the corporate taxpayers, prepared the income tax returns of both corporations from their books and records; these returns reflected all and only all the items set forth in the respective books and records. Smyth also prepared the individual returns of Urban, Healy and their respective joint returns with their wives, from information obtained from the books and records of the corporations and from information supplied by the taxpayers.

There was a shortage of automobiles in relation to the demand. Consequently, automobile dealers, including the taxpayer corporations, were often able to demand of a customer that all or part of the sales price be paid in cash (i. e., currency). Further, they were able to demand that a customer trade in a used automobile (referred to as a "trade-in"), as a prerequisite to purchasing a new one, for which he would be allowed against the new car price an amount often considerably below the fair market value of such a used automobile sold outright either to an individual or to a dealer.

Sales and trade-in allowances were entered on the books and records of Logan Square Motors and Logan Square Auto Mart from the information as to sales prices and trade-in allowances shown on bills of sale prepared by the corporations. If an additional amount was received on a sale and was not included on the bill of sale as part of the sales price, it would also be omitted from the books and records and income tax returns of the selling taxpayer. If there was a trade-in received but not shown on the bill of sale, such a trade-in would not be reflected on the books and records of the corporation and its subsequent sale would not be reported on its income tax return.

Al Kohn and his brother Seymour were co-owners of Logan Square Willys, Inc. (hereinafter called Willys), and were engaged in the business of selling new and used automobiles. During the years 1947 and 1948 they purchased used cars from Logan Square Motors and Logan Square Auto Mart solely through Urban and Healy. Al purchased about 95 per cent of such automobiles and paid for some by check and for some by cash. Occasionally he received a certificate of title in the name of an individual unknown to him. On some purchases Healy and Urban would request Al to have Willys record the purchase as though made from the individual whose name appeared on the certificate of title; such individual would in fact be a customer who had traded in a car on the purchase of a new automobile from either Logan Square Motors or Logan Square Auto Mart.

The corporate taxpayers reported the following gross sales:

| Year | Logan Square Auto Mart | Logan Square Motors |
| --- | --- | --- |
| 1946 | $182,457.84 | $439,381.17 |
| 1947 | 166,595.46 | 551,036.40 |
| 1948 | 30,420.90 | 637,573.86 |

According to their income tax returns,[3] Logan Square Auto Mart and Logan Square Motors had earnings and profits in the amounts and as of the end of the years:

| Year | Logan Square Auto Mart | Logan Square Motors |
| --- | --- | --- |
| 1946 | $15,830.01 | $24,679.11 |
| 1947 | 13,547.08 | 53,025.53 |
| 1948 | 11,842.61 | 68,470.03 |

Some of the sales made by each corporate taxpayer for each year here involved were properly recorded on its books and records, and the purchasers in those transactions were not requested to pay any part of the sales price in cash.

In the United States District Court for the Northern District of Illinois, on January 17, 1956, Urban pleaded guilty to counts 1 to 6, inclusive, of an indictment charging that he "did willfully and knowingly attempt to defeat and evade a large part of" the taxes due and owing by him and the corporate taxpayers for the years 1947 and 1948, and by his wife for the year 1948, "by filing and causing to be filed with the Collector * * * false and fraudulent" income tax returns, in violation of Section 145(b) of the Internal Revenue Code of 1939.[4]

The Tax Court found, *inter alia*, that where part of the total sales price of any automobile sold was received in cash, only the amount of the payment exclusive of the cash was recorded on the books and records of the corporation as the sales price of the automobile sold. The Tax Court further found in regard to "Trade-ins": (1) Where, on the sale of an automobile, a trade-in was received

---

3. Figures which we now quote from the returns reflect the "Earned surplus and undivided profits" for each of the years in question.

4. 26 U.S.C.A. § 145(b).

by a corporate taxpayer, it recorded as the sales price of the automobile it was selling the dollar amount it received, plus the trade allowance, if any. (2) If the taxpayer corporation allowed nothing on the trade-in, it recorded only the other amount received as the sales price. (3) Whether any such allowance was made or not, the fact that a trade-in was received by the corporation was not reflected either on the bill of sale or on the books and records of the corporation. (4) Further, where such a trade-in was sold to Willys, or any other concern, the fact that such a sale was made, and the amount received from the purchaser, were not recorded on the books and records of the taxpayer.

In addition to reciting specifically the facts relating to numerous sales by the corporations, the Tax Court found that in 1946 Logan Square Motors, acting through Urban, willfully understated its sales receipts on its bills of sale and books by certain payments which Urban required in cash from customers. Urban, during the year 1946, received payments in cash from customers of both corporate petitioners, which amounts he retained and deliberately failed to report on his income tax return for that year, and the deficiencies in tax of Logan Square Motors and Urban for the year 1946 are due in whole or in part to fraud with intent to evade tax.

The Tax Court also found that during 1947 and 1948 Healy and Urban co-operated in a course of conduct whereby some part of the corporate taxpayers' sales income was omitted from their income tax returns, and during these same years, Healy and Urban received substantial amounts in cash from sales made by them which they retained and failed to report as income.

The Tax Court further found that Logan Square Auto Mart and Logan Square Motors filed false and fraudulent returns for the years 1947 and 1948, with intent to evade tax, and a part of the deficiency for each year is due to fraud with intent to evade tax, and that Urban and Healy filed false and fraudulent returns for the year 1947 and joint returns (with their respective wives) for the year 1948, and a part of the deficiency for each year is due to fraud with intent to evade tax.

The Tax Court, sustaining the Commissioner's deficiency determinations, held that the Commissioner had proved fraud on the part of both individual and corporate taxpayers for the taxable years 1947 and 1948, and had also proved fraud on the part of Urban and Logan Square Motors for the year 1946; but the Court held that the Commissioner had not proved fraud on the part of Healy and Logan Square Auto Mart for the year 1946. The Tax Court thus held that the statutory penalty for fraud of 50 per cent of the entire deficiency should be added to the deficiencies of Urban and Logan Square Motors for the years 1946, 1947 and 1948 and to the deficiencies of Healy and Logan Square Auto Mart for the years 1947 and 1948,[5] as determined by the Commissioner for those years; and further held that, in view of the findings of fraud, the statute of limitations, § 275(a) of the Internal Revenue Code of 1939,[6] does not operate to bar recovery of the deficiencies for the years 1946, 1947 and 1948. The Commissioner has not sought review of the Tax Court's failure to find fraud on the part of Healy and Logan Square Auto Mart for the year 1946.

■ 1. Respondent was permitted to introduce into evidence a record of Alvin A. Urban's plea of guilty in the criminal case involving the 1947 and 1948 tax returns of the corporate taxpayers and himself. Petitioners themselves introduced evidence to explain the health conditions of Urban and his wife Alyce at that time.

There was no error in the admission in evidence of this plea of guilty. It was competent evidence because it was an admission against interest. Levelle v.

---

5. Including wives joining in returns for the year 1948.

6. 26 U.S.C.A. § 275(a).

Powers, 10 Cir., 248 F.2d 774, 776; Dunham v. Pannell, 5 Cir., 263 F.2d 725, 728.

■ Moreover the evidence in regard to the health of the Urbans was before the court for whatever value it had.

■ 2. Petitioners contend that the Tax Court erred in admitting testimony against the deceased Alvin A. Urban wherein witnesses stated they made monetary payments to him. Relying upon 26 U.S.C.A. § 7453, 1954 Code, petitioners quote, as applicable to the trial in the Tax Court, District of Columbia Code, § 14–302 (1951), providing:

"In any civil action *against* * * executor, administrator, heir, legatee, devisee, assignee, or other representative of a deceased person * * * no judgment or decree shall be rendered in favor of the plaintiff founded on the uncorroborated testimony of the plaintiff or of the agent, servant, or employee of the plaintiff as to any transaction with or action, declaration or admission of the deceased * * *." (Italics supplied.)

Petitioners contend that this "testimony against the deceased Alvin A. Urban was based solely upon his alleged transactions while a stockholder and officer of the corporate petitioners", and that the testimony concerned seventeen transactions in which the witnesses alleged they made payments to Urban.

No error was committed in failing to strike this evidence for several reasons, one of which is that the testimony under attack was not that of the plaintiff or any agent, servant, or employee of the plaintiff, if it be assumed, as petitioners dubiously argue, that in this case the Commissioner, although a defendant in the Tax Court, is in reality a plaintiff. The witnesses whose testimony petitioners attack had no legal relation to the Commissioner or the government and were not within the prohibition of the act relied on by petitioners.

3. In their brief, as point III, petitioners contend that "the Tax Court erred in restricting cross-examination and petitioners should have been allowed to inspect certain income tax returns of certain respondent's witnesses."

■ We have read several times the entire argument under this heading. Our inability to comprehend what the brief writer is attempting to say probably arises in part from the fact that there has been a complete failure to comply with an essential part of rule 17(a) (1) of this court, 28 U.S.C.A., which reads:

"Then shall follow a concise statement of the facts, without argument or comment thereon, with the pages of the printed appendix or record where the recited facts appear."

To find the facts loosely glossed over in point III of the brief, without any indication of the pages of the appendix where we may find definite statements thereof, would be a stupendous job, inasmuch as the appendix consists of 700 printed pages, mostly the printed testimony of 72 witnesses. We have no obligation or facility to perform this task and we are therefore not required to entertain point III.

■ 4. From our inspection of the record we find that in the record as a whole there is substantial evidence to support the Tax Court's findings and there is clear and convincing evidence to support its findings of fraud. Accordingly, we hold that the Commissioner has met his burden of proof as required by both the general quantitative test and the special qualitative test as to proof of fraud.

For the reasons herein stated, the decisions of the Tax Court are affirmed.

Decisions affirmed.