T.C. Memo. 2002-117

UNITED STATES TAX COURT

TAN DANG AND KE T. CHAW DANG, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6715-00.                    Filed May 13, 2002.

<u>Joyce Rebhun</u>, for petitioner.

<u>Michael W. Berwind</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income tax of $10,448 for 1995, $11,065 for
1996, and $11,689 for 1997, and accuracy-related penalties under
section 6662(a) of $2,089.60 for 1995, $2,213 for 1996, and
$2,337.80 for 1997.

The issues for decision are:

1. Whether petitioners correctly reported gross receipts from their grocery store business for 1995, 1996, and 1997. We hold that they did.

2. Whether petitioners are liable for the accuracy-related penalty for negligence for 1995, 1996, and 1997. We hold that they are not.

Section references are to the Internal Revenue Code in effect for the years in issue. References to petitioner are to Tan Dang.

FINDINGS OF FACT

Some of the facts are stipulated and are so found.

A. Petitioners

Petitioners are husband and wife who resided in California when they filed the petition.

B. Manwah Supermarket

During the years in issue, petitioners owned and operated a 4,000-square-foot grocery store in downtown Los Angeles, California, known as L.A. Manwah Supermarket (Manwah). Manwah was a sole proprietorship in 1995 and a partnership in 1996 and 1997.

Petitioners sold meat, poultry, fruits, vegetables, canned goods, and dry goods at Manwah. Canned and dry goods were about 25 percent of Manwah's sales, and meat, poultry, and produce were about 75 percent. Typically, the work at Manwah was performed by

7 employees and members of petitioners' family.  Manwah employees used cash registers which had an internal tape system that recorded each sale.

Manwah was located in an economically depressed area in Los Angeles.  About half of the purchases at Manwah were made with food stamps.  Manwah suffered losses from shoplifting. Petitioners closed Manwah in December 1998 or in 1999.  Six of the 7 grocery stores in the area where Manwah was located had closed by the time of trial.

C.   Petitioners' Returns

Petitioners used a bookkeeping business known as Asian Services to prepare their personal and partnership tax returns for 1996, 1997, and 1998.

Petitioners gave Asian Services daily cash register tapes and other records of receipts and expenses for Manwah.  Asian Services recorded total daily sales and other information, and then returned the records, including the tapes, to petitioners. Petitioners stored the records at Manwah.  Petitioners threw out some of Manwah's records for the years in issue when they cleaned up the storage area after a visit by the Health Department.

Petitioners timely filed Forms 1040, Individual Income Tax Return, for 1995, 1996, and 1997, and Forms 1065, U.S. Partnership Return of Income, for 1996 and 1997.  Petitioners reported costs

of goods sold and gross receipts for Manwah as follows:

| Year | Cost of goods sold | Gross receipts |
|------|--------------------|----------------|
| 1995 | $869,270 | $1,088,298 |
| 1996 | 862,277 | 1,074,289 |
| 1997 | 881,352 | 1,077,288 |

D.   Audit

Richard Ng, respondent's revenue agent, audited petitioners' 1995, 1996, and 1997 returns.  He went to Manwah and Asian Services to examine Manwah's records.  Petitioners gave Ng daily summaries or tapes of Manwah's sales for 331 days for 1995, 6 months for 1996, 9 months for 1997, and all of 1998.

Ng used three indirect methods to estimate Manwah's gross receipts for 1995, 1996, and 1997 because petitioners did not have complete daily records of sales for those years.  First, Ng used a percentage markup method.  He applied the following formula to estimate Manwah's gross receipts:

$$\text{Gross receipts} = \frac{\text{Cost of goods sold}}{(1 - \text{Profit percentage})}$$

Ng calculated Manwah's gross receipts as follows.  He used average gross profit percentages contained in Dun & Bradstreet data for U.S. grocery stores with annual gross receipts of up to $1 million. Those percentages were 22.6 for 1995, 22.5 for 1996, and 21.2 for 1997.  He used the costs of goods sold that petitioners reported on their returns for the years in issue.  Using this method, Ng

estimated Manwah's gross receipts to be $1,123,087 for 1995, $1,111,182 for 1996, and $1,118,467 for 1997.

Second, Ng estimated Manwah's gross receipts by annualizing the amounts shown on the daily records that petitioners gave him. The record does not include the results of that analysis.

Third, petitioners gave all of Manwah's records for 1998 to Ng. Ng used them to estimate the markups of specific products sold in Manwah. The record does not indicate which products he analyzed. Ng concluded that the average markup for those unspecified products was 25 to 28 percent.

Respondent determined that petitioners understated Manwah's gross receipts on their returns solely by applying the Dun & Bradstreet gross profit percentage data to Manwah's reported costs of goods sold. Respondent did not use Ng's estimate of Manwah's annualized daily receipts or markup of specific products for 1998 to determine petitioners' unreported income.

OPINION

A.  Whether Petitioners Underreported Gross Receipts

Petitioners contend that they had gross receipts from Manwah of $1,088,298 for 1995, $1,074,289 for 1996, and $1,077,288 for 1997, as they reported on their returns.

Respondent contends that petitioners had gross receipts of $1,123,087 for 1995, $1,111,182 for 1996, and $1,118,467 for 1997,

and contends that respondent's determination, based solely on Ng's application of average gross profit percentages from Dun & Bradstreet to Manwah's costs of goods sold, was reasonable. We disagree. The Dun & Bradstreet data did not provide a reliable basis to estimate Manwah's gross profit percentages for the years in issue because Manwah was clearly below average. Manwah was a failing business in an economically depressed neighborhood.

Respondent contends that petitioner's testimony regarding Manwah's difficulties was self-serving and not credible. We disagree. We decide whether a witness is credible based on objective facts, the reasonableness of the testimony, and the demeanor and consistency of statements made by the witness. Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); Pinder v. United States, 330 F.2d 119, 124-125 (5th Cir. 1964); Concord Consumers Hous. Coop. v. Commissioner, 89 T.C. 105, 124 n.21 (1987). We may discount testimony which we find to be unworthy of belief, but we may not arbitrarily disregard testimony that is competent, relevant, and uncontradicted. Conti v. Commissioner, 39 F.3d 658, 664 (6th Cir. 1994), affg. and remanding on another ground 99 T.C. 370 (1992) and T.C. Memo. 1992-616; Banks v. Commissioner, 322 F.2d 530, 537 (8th Cir. 1963), affg. in part and remanding in part on another ground T.C. Memo. 1961-237.

Petitioner's testimony was credible and consistent both on direct and cross-examination.  Petitioner credibly testified about the manner in which petitioners kept and provided records to their return preparers.  Ng, respondent's sole witness, did not contradict petitioner's testimony that Manwah was economically below average.  We conclude that application of the Dun & Bradstreet data to Manwah was inappropriate.

Ng testified that he analyzed markups for selected items sold by Manwah in 1998 and concluded that the average markup was 25 to 28 percent.  However, Ng did not indicate which items he analyzed or how he selected them.  Petitioner testified that markup percentages varied by product.  For example, he testified that the markup for dry goods was greater than that for produce.  Ng's testimony was too general to establish that Manwah's markups were incorrect.

Respondent contends that Ng's annualized gross receipts estimates for Manwah show that petitioners' gross receipts for the years in issue are incorrect.  We disagree.  Ng's estimates are not in the record.

Citing Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947), respondent contends that we should infer from petitioners' failure to call any employee of Asian Services as a witness that the employee's

testimony would have been unfavorable to petitioners. We disagree. If a witness is equally available to both parties and neither party calls that witness at trial, then no adverse inference is warranted. See United States v. Rollins, 862 F.2d 1282, 1297-1298 (7th Cir. 1988); Kean v. Commissioner, 469 F.2d 1183, 1187-1188 (9th Cir. 1972), affg. on this issue and revg. on another issue 51 T.C. 337, 343-344 (1968); Grossman v. Commissioner, T.C. Memo. 1996-452, affd. 182 F.3d 275 (4th Cir. 1999); Gaw v. Commissioner, T.C. Memo. 1995-531. We have no reason to believe that a witness from Asian Services was not equally available to both parties. Thus, we do not apply the adverse inference rule.

We conclude that petitioners had gross receipts from their grocery store business of $1,088,298 for 1995, $1,074,289 for 1996, and $1,077,288 for 1997, and that they did not underreport their income for those years.

B.  Whether Petitioners Are Liable for the Accuracy-Related Penalty for Negligence

In view of our conclusion above, we conclude that petitioners are not liable for the accuracy-related penalty for negligence for any of the years in issue.

To reflect the foregoing,

Decision will be
entered for petitioners.