# United States Tax Court

T.C. Summary Opinion 2023-16

GREGORY F. TEAGUE AND RACHEL S. TEAGUE,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 5749-20S.                                   Filed April 19, 2023.

————

*Peter L. Kutrubes*, for petitioners.

*Daniel C. Chavez*, *Erica B. Cormier*, *Michael E. D'Anello*, and *Nina P. Ching*, for respondent.


SUMMARY OPINION

COLVIN, *Judge*: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the Petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this Opinion shall not be treated as precedent for any other case.

Respondent determined that petitioners have a deficiency in income tax of $6,842 for 2017. Petitioners deducted $23,967 in total rental real estate losses for 2017 from their three cabins in Hiram, Maine (Maine cabins or cabins). Respondent determined that petitioners' loss from the cabins was a passive activity loss. Respondent concedes that petitioners may deduct the loss, subject to the income phaseout provisions in section 469(i)(3).[1] Because of that phaseout,

_____

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and all Rule references

respondent allowed $1,540 and disallowed $22,427 of petitioners' $23,967 total rental real estate loss. Petitioners contend that Mr. Teague was a real estate professional under section 469(c)(7) and that, as a result, they may use the entire loss to offset ordinary income.

After concessions,[2] the issue for decision is whether Mr. Teague qualifies as a real estate professional under section 469(c)(7). As discussed below, we hold that he does not.

## *Background*

A. *Petitioners*

During 2017 petitioners owned a duplex in New Hampshire (New Hampshire duplex) and lived in one of its two units with their four children. Their two previous homes were dilapidated properties that they gutted and rebuilt to sell for a profit.

### 1. *Rachel Teague*

In 2017 Mrs. Teague was the primary caretaker for petitioners' children. She also worked two four-hour shifts outside of the home each week as a nurse at a pregnancy care center. One of those shifts was on Wednesday evenings from approximately 4 p.m. to 8 p.m. Mr. Teague supervised the children about one-half of the time while Mrs. Teague was working the evening shift.

Mrs. Teague assisted in rehabilitating the Maine cabins in 2017. She visited the Maine cabins at least 60 times in that year. These visits usually occurred on the weekend, and her children regularly accompanied her. Many of these weekend excursions occurred during the summer. Petitioners kept a paddleboat, a kayak, and innertubes at the cabins. Mrs. Teague and the children went swimming and boating in the afternoons, and sometimes Mr. Teague joined them. On occasion she returned to their New Hampshire duplex on Sunday with the children while Mr. Teague stayed in Maine to continue work on the cabins.

---

are to the Tax Court Rules of Practice and Procedure. We round all dollar amounts to the nearest dollar. Petitioners resided in New Hampshire when the Petition was filed. References to the tax year are to 2017.

[2] Respondent concedes that petitioners are not liable for the accuracy-related penalty under section 6662(a).

2.    *Gregory Teague*

a.    *Comcast Employment*

Mr. Teague was employed full time during 2017 as a sales representative for Comcast. He was responsible for Comcast sales to approximately 60 small apartment complexes. He met with property managers a few days per week, and on other days he took orders over the phone and submitted them through Comcast's system via an iPad. Property managers sent Mr. Teague leads for potential customers whom he contacted directly to provide Comcast service. He conducted most of this business remotely and visited the Comcast office only two to four hours per week. His position required him to be on call, and he occasionally took calls to make sales on weekends. We discuss how many hours he worked for Comcast in 2017 *infra* pp. 5–6.

b.    *Real Estate Agent*

Mr. Teague obtained his real estate license in 2013. He represented a client as the buyer's agent in one sale in 2017, a process that took approximately 30 hours. In addition he completed 12 hours of required continuing education in 2017.

3.    *Property Development and the Maine Cabins*

Since 2000 or 2001 the Teagues have purchased, renovated, and resold for profit several residential properties. Mr. Teague honed his construction abilities on those homes.

Petitioners bought the three Maine cabins in 2015 for $125,000. The cabins were in varied states of disrepair. One of the cabins (cabin 1) needed a lot of cleanup and a new bathroom, but the sink, cabinets, doors, and windows were salvageable. By 2016 the work on cabin 1 was completed, and it was rented a few times. Two of the cabins (cabins 2 and 3) needed to be rehabilitated completely. Mr. Teague performed a significant amount of work on cabins 2 and 3 in 2017. He also occasionally sought the assistance of friends and hired contractors to complete various construction tasks.

During 2017 petitioners did not maintain any records showing how much time Mr. Teague spent participating in rental real estate activities such as renovating the Maine cabins. Mr. Teague spent many hours renovating the cabins during 2017 and performing related tasks,

such as gathering furnishings and building materials on other days. We discuss how many hours he worked on the cabins in 2017 *infra* pp. 6–8.

B.    *Tax Return*

Petitioners jointly filed their 2017 Form 1040, U.S. Individual Income Tax Return. On Schedule E, Supplemental Income and Loss, they reported that they owned two rental properties, the New Hampshire duplex and the Maine cabins. Petitioners reported $5,843 of net income from the New Hampshire duplex, a net loss of $29,810 from the Maine cabins, and a total rental real estate loss of $23,967. They did not elect to treat their New Hampshire duplex and Maine cabins as a single activity. They reported a total rental real estate loss of $23,967 on Line 17 of Form 1040.

*Discussion*

A.    *Background and Petitioners' Contentions*

Respondent concedes that the Maine cabins were a real estate activity in which petitioners actively participated but contends that petitioners are subject to an income phaseout and thus may deduct only $1,540 of their $23,967 loss from the cabins. Petitioners contend that Mr. Teague qualifies as a real estate professional under section 469(c)(7) and thus they are not subject to the income phaseout and may deduct a loss of $23,967 from the cabins for 2017.

For Mr. Teague to qualify as a real estate professional, petitioners must show that (1) he spent more than 750 hours during the taxable year in real property trades or businesses in which he materially participated, and (2) more than one-half of the personal services he performed in trades or businesses in 2017 were performed in real property trades or businesses in which he materially participated. *See* § 469(c)(7)(B). In deciding whether a taxpayer is a real estate professional, a taxpayer's material participation is determined separately with respect to each rental property unless the taxpayer makes an election to treat all interests in rental real estate as a single rental real estate activity. § 469(c)(7)(A). Petitioners did not elect to treat the New Hampshire duplex and the cabins as a single activity in 2017. Consequently, we do not consider the time Mr. Teague spent working on properties other than the Maine cabins in deciding whether he was a real estate professional in 2017.

Petitioners appear to contend that they qualify as real estate professionals if we count the total time they both spent working on the cabins. However, in the case of a joint return, the requirements for qualification as a real estate professional are satisfied only if either spouse separately meets the requirements. § 469(c)(7)(B). Petitioners do not contend that Mrs. Teague separately qualifies as a real estate professional, and so we do not further consider time she spent in these activities.

The Commissioner's determination in a notice of deficiency is generally presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Under section 7491(a), the burden of proof may shift to the Commissioner if the taxpayers comply with all substantiation requirements in the Internal Revenue Code, introduce credible evidence with respect to factual issues relevant to ascertaining their liability, and cooperate with reasonable requests by the Commissioner for information, documents, and meetings. Petitioners do not contend that they have met the requirements of section 7491 for shifting the burden of proof. *See* Rule 142(a)(2). Thus, the burden of proof for all factual issues remains with petitioners. To prevail they must show that during 2017 Mr. Teague spent more time performing personal services relating to the Maine cabins than he did working for Comcast.

B.    *Mr. Teague's Hours Spent Working for Comcast*

We next decide how much time Mr. Teague spent working for Comcast in 2017. At trial Mr. Teague gave several inconsistent estimates of the amount of time he worked for Comcast in 2017, including: 40 hours per week (two times), more than 30 hours per week (two times), 20 to 40 hours per week (three times), and 1,840 hours per year (once). He also varyingly testified that he took almost six weeks (once) and 29 days (once) of vacation in 2017. Because Mr. Teague held a full-time position with Comcast and testified twice that he worked 40 hours per week and once that he worked 1,840 hours per year for Comcast (40 hours per 52 weeks less six weeks of vacation), we find that he worked for Comcast 40 hours per week for 46 weeks (1,840 hours) in 2017.

C.   *Mr. Teague's Hours Spent Working at or on Behalf of the Maine Cabins*

Petitioners contend that in 2017 Mr. Teague worked 1,993 hours on the cabins, including 1,224 hours at the cabins (an average of 12 hours per day for 102 days), and 769 hours in other activity relating to the cabins, such as driving to and from the cabins and searching for and obtaining materials and furnishings for the cabins.

Petitioners kept no written records of the amount of time Mr. Teague spent working on the cabins in 2017. The record includes numerous photos taken by Mrs. Teague and several receipts for building supplies and furnishings. The photos show petitioners were present at the cabins at least 62 days. The receipts show on which days petitioners purchased various building supplies and furnishings but do not show how many hours Mr. Teague worked on the cabins. Petitioners prepared for trial handwritten and typed mileage logs that show when they believe Mr. Teague went to the cabins and his mileage. The logs do not show how many hours Mr. Teague spent working on the cabins. Petitioners' only evidence of the amount of time Mr. Teague worked at the cabins is his testimony that he worked an average of 12 hours per day for the 102 days he was at the cabins.

We decide whether a witness' testimony is credible by relying on objective facts, the reasonableness of the testimony, the consistency of the witness' statements, and the witness' demeanor. *See Quock Ting v. United States*, 140 U.S. 417, 420–21 (1891); *Wood v. Commissioner*, 338 F.2d 602, 605 (9th Cir. 1964), *aff'g* 41 T.C. 593 (1964); *Pinder v. United States*, 330 F.2d 119, 124–25 (5th Cir. 1964); *Concord Consumers Hous. Coop. v. Commissioner*, 89 T.C. 105, 124 n.21 (1987). We may discount testimony which we find unworthy of belief, *see Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986), but we may not arbitrarily disregard testimony that is competent, relevant, and uncontradicted, *see Conti v. Commissioner*, 39 F.3d 658, 664 (6th Cir. 1994), *aff'g and remanding* 99 T.C. 370 (1992), *and* T.C. Memo. 1992-616.

We accept Mr. Teague's testimony that he was at the cabins 102 days in 2017. This claim is consistent with the number of days stated in petitioners' counsel's pretrial email sent on November 5, 2021. However, we do not accept petitioners' claim that Mr. Teague averaged 12 hours of work per day for those 102 days. Petitioners' claim fails to take into account time he spent eating and participating in recreation activities with his family and friends or Comcast work interruptions.

While at the cabins, Mr. Teague had breakfast, sometimes lunch, and dinner with his family. The family kept a paddleboat, a kayak, and innertubes on the property. Mr. Teague sometimes used this equipment, and he occasionally took his wife and children on the boat for quick tubing tours and similar activities. Mr. Teague testified that on hot days he took "a few minutes to jump in the lake and cool off for a few minutes." Mrs. Teague stated that during a weeklong summer vacation to the cabins, the family worked in the morning, swam in the lake for a couple of hours in the afternoon, and then worked a little more in the evening. Because of these other activities, we do not believe that Mr. Teague consistently worked an average of 12 hours every day he was at the cabins.

Mr. Teague's testimony provided details for only 304 of the 1,224 hours he claims to have worked on site at the cabins in 2017. Thus, we have no information about the tasks Mr. Teague claims he performed for the remaining 920 hours. The record has some specifics for the 769 hours claimed for shopping and buying items for the cabins and driving to and from Maine, but far less than the 769 total hours claimed for those activities.

The estimate of the number of hours Mr. Teague worked at the cabins lacks credibility because it increased as petitioners became fully aware of the number of hours required to prevail in this case. Mr. Teague initially believed that he need work only 750 hours on the cabins during 2017 to qualify as a real estate professional. In an email to respondent's counsel dated November 5, 2021, petitioners' counsel said Mr. Teague spent 816 hours working at the cabins, not 1,224 hours as petitioners estimated at trial. As of the date of that email, Mr. Teague knew about the 750-hour requirement, *see* § 469(c)(7)(B)(ii), but he did not know about the requirement that he work more hours in real property trades or businesses than in his Comcast position, *see* § 469(c)(7)(B)(i).

Petitioners contend that Mr. Teague was able to work on the cabins during some of the same time that he was working for Comcast, for example, by conducting work-related phone calls while driving to pick up items for the cabins. Mr. Teague testified, for example, that he did Comcast work on the phone while picking up a dock to take to the lake. However, petitioners provided no reliable way to estimate how much time Mr. Teague did Comcast and real estate work simultaneously.

D.    *Conclusion*

On the basis of the foregoing, we conclude that petitioners have not shown Mr. Teague worked more than 1,840 hours on the Maine cabins in 2017, and petitioners may not deduct real estate activity losses in excess of the $1,540 allowable under section 469(i) for 2017.

To reflect the foregoing,

*Decision will be entered under Rule 155.*