SPITZER COLUMBUS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Spitzer Columbus, Inc. v. Commissioner
Docket No. 5833-94.
United States Tax Court
T.C. Memo 1995-397; 1995 Tax Ct. Memo LEXIS 397; 70 T.C.M. (CCH) 448; August 17, 1995, Filed *397 Decision will be entered under Rule 155. Anthony B. Giardini, for petitioner. Marc A. Shapiro, for respondent. RAUM, Judge RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined deficiencies in income tax totaling $ 129,241.14, $ 111,344.38, and $ 108,129.11 for the years 1989, 1990, and 1991, respectively. The issue before us is whether petitioner properly accrued an expense under section 461 [1] for coupons issued pursuant to a consent judgment entered into in 1989. For reasons appearing in the record, a computation under Rule 155 will be necessary. Petitioner, Spitzer Columbus, Inc., has its principal place of business in Columbus, Ohio. During the years at issue, it operated and maintained a motor vehicle dealership for motor vehicle sales, repairs, and service. Petitioner used the accrual method of accounting. *398 In 1987, the Ohio Attorney General's Consumer Protection Division commenced a nonpublic investigation of the Spitzer Auto Dealerships, one of which was petitioner, in connection with their solicitation for sale and sale of new and used motor vehicles in Ohio. The investigation was commenced in order to determine whether petitioner and the other Spitzer Auto Dealerships were engaging in, or had engaged in, unfair or deceptive acts or practices in violation of Ohio Revised Code section 1345.01 et seq.
The Ohio attorney general filed a complaint charging the Spitzer Auto Dealerships, including petitioner, with violating various provisions of Ohio's Consumer Sales Practices Act, Ohio Revised Code section 1345.01 et seq. and the substantive rules promulgated thereunder. The Spitzer Auto Dealerships, including petitioner, filed a response to the complaint under the name Lakewood Chrysler-Plymouth, Inc.
On November 22, 1989, a consent judgment was entered into between the Ohio attorney general and the Spitzer Auto Dealerships, including petitioner. In accordance with the terms of the consent judgment, petitioner was ordered to make restitution of every $ 97.50 Delivery & Handling *399 fee that was included as a part of the purchase price of motor vehicles that were purchased by consumers from petitioner from May 1, 1987, to the date of the consent judgment. To effectuate this order, petitioner had to provide the attorney general of Ohio, by December 29, 1989, with a list of all consumers who purchased a new or used motor vehicle in a transaction involving a delivery and handling fee during the applicable period. Petitioner also was to provide a coupon in the name of each consumer. The coupons were to be mailed to the affected consumers, and were to be accompanied by a notice. The coupons were valid at any Spitzer dealership for either $ 100 toward the purchase of any part or service, or $ 150 toward the purchase of any new or used motor vehicle. In the event the consumer was not satisfied with the coupon offer, the consumer could return the coupon to the attorney general, along with a signed statement rejecting the offer, for $ 97.50 in cash, provided that certain conditions were met. The attorney general had to be satisfied that the consumer in fact paid a delivery and handling fee in the amount of $ 97.50 and that the fee was not negotiated away at the time *400 of the purchase. Under certain circumstances involving discounts and trade-ins, there was a rebuttable presumption that the delivery and handling fee was negotiated away. Petitioner had the burden of proving that the consumer did not pay a delivery and handling fee of $ 97.50. The attorney general made all decisions regarding whether the conditions were met. Petitioner issued 3,719 coupons, each of which was accompanied by the notice. Most of the coupons were issued in March 1990 (no coupons were issued prior to March 1990); however, some were issued as late as February 1991, to consumers whose addresses were difficult to obtain. During the year 1990, 1,116 of the coupons issued by petitioner were redeemed. They were redeemed as follows: 572 for $ 97.50 cash refunds, 514 for $ 100 off services and/or parts, and 30 for $ 150 off car purchases. During the year 1991, 413 of the coupons issued by petitioner were redeemed. They were redeemed as follows: 62 for $ 97.50 cash refunds, 344 for $ 100 off services and/or parts, and 7 for $ 150 off car purchases. A total of 1,057 consumers who received a coupon from petitioner made application for a cash refund. Many of these consumers were *401 denied a cash refund because they had not paid the $ 97.50 delivery and handling fee. Only 634 consumers received a cash refund from petitioner. The coupons issued by petitioner expired on December 31, 1991. Of the 3,719 coupons issued by petitioner, there were 2,190 coupons that were never redeemed. On petitioner's 1989 corporate income tax return, Form 1120, petitioner reduced its gross receipts or sales by the amount of $ 362,602.50 for the 3,719 coupons issued by petitioner at $ 97.50 each (3,719 times $ 97.50 = $ 362,602.50). Petitioner has never included in income the unredeemed coupon amounts, which were deducted in 1989. During petitioner's taxable years 1990 and 1991, when coupons were redeemed toward the purchase of any new or used motor vehicle from petitioner or toward the purchase of any part or service from petitioner, petitioner included in income, for tax purposes on its Federal tax returns, the sale price or service fee less the coupon amount. Section 162(a) provides that "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year". Whether an accrual basis taxpayer has incurred an expense is governed by *402 the "all events" test. See United States v. General Dynamics Corp., 481 U.S. 239, 242 (1987). The origin of the test, as well as its scope, is set forth in United States v. Hughes Properties, Inc., 476 U.S. 593, 600 (1986), as follows: For a number of years, the standard for determining when an expense is to be regarded as "incurred" for federal income tax purposes has been the "all events" test prescribed by the Regulations. * * * This test appears to have had its origin in a single phrase that appears in this Court's opinion in United States v. Anderson, 269 U.S. 422, 441 (1926) * * *. Since then, the Court has described the "all events" test "established" in Anderson as "the 'touchstone' for determining the year in which an item of deduction accrues," and as "a fundamental principle of tax accounting." United States v. Consolidated Edison Co. of New York, 366 U.S. 380, 385 (1961) (citing cases). Under the Regulations, the "all events" test has two elements, each of which must be satisfied before accrual of an expense is proper. First, all the events *403 must have occurred which establish the fact of the liability. Second, the amount must be capable of being determined "with reasonable accuracy." Treas. Reg. § 1.446-1(c)(1)(ii). * * *
In 1984, Congress incorporated the "all events" test into the Internal Revenue Code by adding a new section 461(h). [2] Section 461(h)(4) describes the familiar "all events" test as follows: (4) All events test.--For purposes of this subsection, the all events test is met with respect to any item if all events have occurred which determine the fact of liability and the amount of such liability can be determined with reasonable accuracy.
Moreover, section 461(h)(1) limits the applicability of the test by providing that it is not met until "economic performance" occurs. [3] See United States v. General Dynamics Corp., supra at 243 n.3. In light of our conclusion hereinafter reached that petitioner has failed *404 to satisfy either element of the "all events" test, we need not consider the applicability of the economic performance requirement.
With regard to the traditional two elements of the "all events" test, it has been decided that "Failure to satisfy either requirement is fatal to petitioner's claim." Burnham Corp. v. Commissioner, 90 T.C. 953, 955 (1988), affd. 878 F.2d 86 (2d Cir. 1989). Petitioner failed to prove either that the liability was fixed or that the amount of the liability was determinable with reasonable accuracy. Therefore, the "all events" test is not satisfied, and the deduction is not allowable. With regard to the fixed *405 liability requirement, petitioner seeks support in United States v. Hughes Properties, Inc., 476 U.S. 593 (1986). There the Supreme Court allowed a deduction for the annual increase in a slot machine's progressive jackpot. A Nevada Gaming Commission regulation prevented the taxpayer from resetting or reducing the amount of the jackpot until there was a winner. The Supreme Court decided that the regulation fixed the taxpayer's liability, which was no longer contingent. Id. at 601-602. That case is distinguishable. The consent judgment at issue here did not create any liability in the way the gaming regulation did. The consent judgment required that petitioner issue coupons to certain consumers. It was when these coupons were presented that liability attached. We agree with the Commissioner that United States v. General Dynamics Corp., 481 U.S. 239 (1987), is more analogous to the present situation. There the taxpayer self-insured its employees' medical care plan. It accrued an amount for medical care given, but for which claim forms were not yet submitted. The deduction was ultimately denied. *406 The Court held that the accrual represented an estimate of liability. Id. at 244. It decided as a matter of law that the filing of a claim was necessary to create liability. Id. at 244 n.4. Therefore, the "all events" test was not satisfied. The presentation of the coupons in this case represented even less of a formality than the claim forms in General Dynamics Corp. While a coupon redeemed for money off a car purchase or parts and/or service would be taken at face value, a coupon returned for cash merely began the process of determining whether the consumer was entitled, under the terms of the consent judgment, to a cash rebate. As the facts of this case demonstrate, the review of the coupons presented for a cash rebate was more than a meaningless step. Only 634 of the 1,057 consumers who made application for a cash rebate actually received payment. Petitioner's liability was not fixed until a consumer presented a coupon, or if the coupon was returned for cash, until the payment was approved. An accrual prior to these events was premature. Where further events must occur before liability is fixed, an accrual amounts *407 to nothing more than a reserve, and it is well established that in the absence of specific statutory provisions providing otherwise, reserves are not deductible. Brown v. Helvering, 291 U.S. 193, 201-202 (1934); World Airways, Inc. v. Commissioner, 62 T.C. 786, 801 (1974), affd. 564 F.2d 886 (9th Cir. 1977); see also Southwestern Energy Co. v. Commissioner, 100 T.C. 500, 508 (1993); sec. 1.461-1(a)(2)(iii)(C), Income Tax Regs.
Petitioner has also failed to prove that the amount of its liability could be determined with reasonable accuracy. We note that each coupon was valid at any Spitzer dealership for $ 100 towards the purchase of parts and/or services, or $ 150 towards the purchase of any new or used motor vehicle. Petitioner, upon whom the burden of proof rests, offered no evidence as to how a coupon issued by petitioner but redeemed at another Spitzer dealership was treated. Absent evidence of an arrangement for reimbursing related dealerships (and receiving reimbursements from the same), petitioner could not prove that its ultimate liability was determinable *408 with reasonable accuracy. Having decided that petitioner was not entitled to a deduction for the coupons in 1989, we turn now to their treatment in subsequent years. In the years 1990 and 1991 when a coupon was redeemed for either parts and/or services or as part of a purchase of a new or used vehicle, petitioner included in income the sale price less the coupon amount. In effect, this resulted in the expensing of the coupons redeemed in 1990 and 1991. While petitioner's treatment is inexplicable in light of its prior expensing of all of the coupons, the treatment given these coupons is proper following the denial of the deduction in 1989. Further, petitioner is entitled to a deduction for cash actually paid for the redemption of coupons in 1990 and 1991. In view of our conclusion that the "all events" test was not satisfied, we need not discuss the parties' arguments concerning the applicability of the economic performance requirement. The deduction taken in 1989 is not allowable. To reflect our ultimate conclusion as to the deductions allowed in 1990 and 1991, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. See sec. 91(a) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 598.↩
3. Sec. 461(h)(1) provides: (1) In general.--For purposes of this title, in determining whether an amount has been incurred with respect to any item during any taxable year, the all events test shall not be treated as met any earlier than when economic performance with respect to such item occurs↩. [Emphasis added.]