T.C. Memo. 1996-116

UNITED STATES TAX COURT

WILLIAM W. HALLE IV, AND JANICE C. HALLE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5120-94.                    Filed March 11, 1996.

William W. Halle IV, pro se.

<u>Sara J. Barkley</u>, for respondent.

MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  Respondent determined a deficiency of

$60,952 in petitioners' Federal income tax for 1990, a section

6651(a)(1)[1] addition to tax of $2,989, and a section 6662(a) accuracy-related penalty of $12,190.

Prior to or at trial, respondent made several concessions resulting in a substantial reduction of the determined deficiency and the elimination of the section 6651(a)(1) addition to tax. Because of petitioner[2] William Halle's contention that the notice of deficiency was arbitrary and that the burden of proof shifted to respondent, the concessions made by respondent are fully set forth below.

On petitioners' Schedule C attached to their 1990 Federal income tax return, they claimed Schedule C business expenses in the total amount of $117,871. During the examination of their return, respondent allowed in full the amounts claimed for repairs, travel, meals and entertainment, which totaled $4,026. For all the remaining categories of expenses claimed on the return, respondent determined in the notice of deficiency that petitioners were entitled to Schedule C expenses in the amount of $63,013 and disallowed $50,832. During the preparation of this case for trial, respondent increased the amount of Schedule C expenses to which petitioners were entitled by $6,072.91 and

---

[1]     Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year 1990, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]     Subsequent references herein to petitioner individually are to William W. Halle IV.

disallowed only $44,759.09. Thus, at trial, respondent agreed that petitioners are entitled to $69,085.91 in Schedule C expenses (instead of the $63,013 allowed by respondent in the notice of deficiency), which amount is in addition to expenses of $4,026 allowed by respondent for repairs, travel, meals and entertainment.

In the notice of deficiency, respondent determined that petitioners had an unreported capital gain of $140,000 from the sale of their New Jersey personal residence. In the stipulation of facts, respondent conceded that petitioners did not have a $140,000 capital gain from the sale of their personal residence during 1990 because it was not sold until February 1991.

On Form 4797 attached to their Federal income tax return for 1990, petitioners reported the sale of business property and reported a gain of $22,000. This reported gain was from the sale of the portion of petitioners' New Jersey residence used for business. Because their personal residence was not sold during 1990, this gain of $22,000 should not have been reported by them in that year.

In Exhibit AL respondent proposed that no gain or loss should be recognized by petitioners on the trade-in of a Chevrolet Cavalier because they did not follow the rules under section 1031 for like kind exchanges when they traded in the Chevrolet Cavalier on the lease of a Chevrolet van. Respondent's position was based on the fact that petitioners had advised

respondent that they had treated the lease of the van as a purchase and not as a lease. At trial, however, petitioner testified that in subsequent years the lease was treated as a lease and not as a purchase, and that petitioners were not entitled to depreciation on the van. Consequently, respondent concedes part of the loss claimed on petitioners' 1990 Federal income tax return for the trade-in of the Chevrolet Cavalier for the van.

In the notice of deficiency, respondent determined that petitioners were liable for an addition to tax under section 6651(a)(1) in the amount of $2,989. However, in the stipulation of facts, respondent conceded that petitioners timely filed their 1990 Federal income tax return and, consequently, are not liable for that addition to tax.

In the notice of deficiency, there is an adjustment to petitioners' self-employment tax, which was increased by respondent. There is no dispute as to whether petitioner's net earnings from his Locksmith/Burglar Alarm business are subject to self-employment tax. That adjustment is computational.

In addition, respondent adjusted petitioners' medical expenses deduction. There is no dispute as to whether petitioners incurred the medical expenses claimed on the return. That adjustment is also computational.

Petitioner, in his answering brief, has raised two preliminary issues, namely, whether respondent should bear the

burden of proof because the deficiency notice was allegedly arbitrary and excessive, and whether the testimony of respondent's witness, Alan Hull, should be rejected as unreliable. The two substantive issues remaining for decision are (1) whether petitioners are entitled to Schedule C business expense deductions in excess of the amounts allowed by respondent, and (2) whether petitioners are liable for the section 6662(a) accuracy-related penalty for negligence or disregard of rules or regulations.

For convenience we are combining our findings of fact and opinion in this case.

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioners William W. Halle IV, and Janice C. Halle resided in Cheyenne, Wyoming, at the time their petition was filed. They timely filed their joint Federal income tax return for 1990.

Prior to and during 1990, petitioner operated a locksmith and burglar alarm business (the locksmith business) as a Schedule C business. He used the accrual method of accounting in that business. His personal residence and locksmith business were located in New Jersey until late December 1990. Petitioner used 50 percent of the New Jersey personal residence for the locksmith business. He also leased additional space in a separate location

from November 1, 1989, to October 31, 1990. The lease agreement called for 12 payments in the amount of $525 per month.

In December 1990, petitioner moved his family, personal residence, and locksmith business to his current location in Cheyenne, Wyoming. He continued to operate his locksmith business in Wyoming and used a portion of his Wyoming residence for his locksmith shop.

In December 1990, petitioners signed an agreement with North American Van Lines to transport their belongings from New Jersey to Wyoming. Actual delivery was made by North Park Transportation Co. on January 10, 1991. Although petitioners contracted to sell their New Jersey personal residence in December 1990, the sale did not occur until February 1991.

In 1990, petitioner used two vehicles in his locksmith business, a Chevrolet Cavalier and a Chevrolet van. Petitioner owned the Cavalier, having acquired it in 1986 at a cost of $13,500. Until 1990, the Cavalier was used 100 percent for personal purposes. On June 1, 1990, petitioner converted the Cavalier to 56 percent business use. On December 20, 1990, petitioner traded in the Cavalier as a downpayment on a 4 year lease for a Chevrolet van. The amount credited to petitioner for the Cavalier trade-in was $2,000. The van was used 100 percent for petitioner's locksmith business. His lease payments for the van were $301 per month.

In 1990, as in previous years, petitioner maintained the financial records for his locksmith business and prepared the Schedule C for the business as well as the rest of petitioners' joint Federal income tax return. Petitioner did not hire an accountant, return preparer, or anyone else to help him maintain his business or financial records or prepare the tax return.

During 1990, petitioner used two different computer accounting systems to maintain his financial records. He personally made all entries into both systems.

Petitioner first used computer accounting system software called Managing Your Money (MYM). From January 1, 1990, until approximately July 15, 1990, petitioner entered expense items into the MYM system on his computer.

After using MYM for a time, petitioner discovered that it did not perform tasks he felt were necessary for his business. To remedy this situation, a second computer accounting software, DAC Easy (DAC), was installed on petitioner's computer prior to July 15, 1990. Petitioner was then able to use either MYM or DAC. From approximately July 15, 1990, to December 31, 1990, petitioner entered his business expenses into DAC, and he no longer made entries into MYM.

Thus, at the end of 1990, petitioner essentially had two separate expense records, one on MYM and the other on DAC. Neither the MYM nor the DAC expense records were complete. MYM

covered only approximately the first 6 months of 1990, and DAC covered only approximately the last 6 months of 1990.

Recognizing this problem, petitioner set out to consolidate the MYM and DAC expense records by transferring the MYM expenses into the DAC system. To accomplish this, petitioner created a summary of the MYM expenses (MYM Summary). The MYM Summary is dated December 31, 1990. On the same date, petitioner transferred each expense from the MYM Summary into the DAC system. This transfer is recorded on the DAC General Ledger Listing Report (DAC Ledger) dated December 31, 1990, at 10:29 a.m.

On December 31, 1990, at 4:47 p.m., petitioner created his DAC Accounting Summary. This summary lists total DAC system expenses by account number under the column heading "Balance YTD".

Therefore, when petitioner completed the entries on December 31, 1990, he had successfully accomplished his goal of consolidating the locksmith business expenses for the entire year into one system, the DAC system.

Petitioner prepared the 1990 joint Federal income tax return on April 15, 1991, more than 3 months after he had consolidated his expenses in the DAC system. To prepare the tax return, he created a series of numbered tally sheets called "scratch pads" on his computer. The purpose of the scratch pads was to give petitioner the dollar amount for total business expense items by

category for the 1990 tax year. The scratch pad categories are identical to the expense categories listed on Schedule C of petitioners' 1990 tax return. Petitioner personally created all the scratch pads.

To create each scratch pad, petitioner retrieved an expense item for a Schedule C category from the MYM system. He then listed the MYM expense on a numbered scratch pad.[3] Petitioner also retrieved the DAC expense for the same category and then listed it on the same numbered scratch pad.[4] The computer added the MYM items to the DAC items to produce a scratch pad dollar amount total for each Schedule C category. Finally, the computer recorded the dollar amount total from a scratch pad onto the appropriate line of petitioner's Schedule C.

I. Preliminary Issues

A. Burden of Proof

Respondent initially determined a deficiency in the amount of $60,952. After concessions, the deficiency was substantially reduced. Petitioner argues that respondent's determination was arbitrary, and, thus, the burden of proof shifted to respondent.

A statutory notice of deficiency is presumed correct. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioner has

---

[3] The MYM amounts listed on each scratch pad are identical to the amounts listed on the MYM Summary.

[4] The DAC amounts are identical to the amounts on the DAC Accounting Summary under the column "Balance YTD".

the burden of proving that the determination was arbitrary. Foster v. Commissioner, 80 T.C. 34, 228 (1983), affd. on this issue 756 F.2d 1430 (9th Cir. 1985). If the taxpayer shows that the deficiency notice is arbitrary or without foundation, the burden of going forward with the evidence shifts to the Commissioner. Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984). Generally, this Court will not look behind the notice of deficiency to review the information used or respondent's motives or procedure involved in making the determination. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327-328 (1974). Our decision with respect to the tax liability is based on the evidence submitted at the trial of the case and not on any record previously developed at the administrative level. Id.

Petitioner made three arguments in support of this contention. First, he argues that respondent's concessions before and at trial rendered the deficiency notice arbitrary as to the remaining issues. Petitioner is incorrect. Respondent's concession of an issue or issues prior to or at trial does not destroy the presumptive correctness of the deficiency notice as to the remaining issues. United States Holding Co. v. Commissioner, 44 T.C. 323, 328 (1965), and cases cited therein.

Second, petitioner contends that the deficiency notice is arbitrary because his canceled checks and other records were not used to determine the deficiency. He testified that he delivered these documents to the Internal Revenue Service (IRS) office in

Cheyenne, Wyoming, at the auditor's request.  He did not keep copies of the documents or obtain a receipt from anyone.  He testified that he put the documents on a receptionist's desk because no one was in the office.  He failed to return to the office or telephone to verify that the receptionist, auditor, or any other IRS employee actually received the documents.

The auditor notified petitioner by letter dated April 9, 1992, that the documents could not be located and requested that he resubmit them.  In response, petitioner submitted his MYM Summary, DAC Ledger, DAC Trial Balance, DAC Accounts Payable Listing, and other documents detailing his business expenses. These records were stamped "received" by the IRS on May 1, 1992. The same records were later returned to petitioner.  He then submitted them to respondent, at her request, prior to the issuance of the deficiency notice.  Moreover, all of petitioner's scratch pads used to calculate the total expense claimed for each Schedule C category were attached to the 1990 joint Federal income tax return.

Although the inability to produce a record that has been unintentionally lost, whether by petitioner, respondent, or a third party, alters the type of evidence that may be offered to establish a fact, the burden of proof is not affected.  Fed. R. Evid. 1004; American Police and Fire Foundation, Inc. v. Commissioner, 81 T.C. 699, 706 (1983); Malinowski v. Commissioner, 71 T.C. 1120, 1124-1125 (1979).

Thus, notwithstanding the purported unavailability of petitioner's original canceled checks and other documents, petitioner provided ample, detailed records of his claimed business expenses prior to the issuance of the deficiency notice on January 13, 1994. Petitioner testified at trial that he made these records very detailed so that he "gave a complete audit trail". Consequently, we think petitioner cannot now complain that respondent lacked his business records and thus arbitrarily determined the deficiency.

Third, petitioner contends that the deficiency notice did not state that the adjustments were made because he claimed certain business expenses twice; i.e., duplicated deductions. Instead, the notice of deficiency states that "it has not been established that any amount in excess of the corrected amount was for an ordinary and necessary business expense or was expended for the purpose designated". A list of adjustments by category and dollar amount followed.

Although petitioner correctly notes that the deficiency notice does not use the word "duplication", the lack of specificity preferred by petitioner does not prove that the notice is arbitrary. A notice of deficiency must describe the basis for and identify the amounts of tax due, any additional amounts, additions to tax, and assessable penalties. Sec. 7522(a) and (b). An inadequate description does not invalidate the notice. Id. The notice must fairly advise the taxpayer that

the Commissioner has determined a deficiency and specify the year and amount. Abrams v. Commissioner, 84 T.C. 1308, 1310 (1985), affd. sub nom. Alford v. Commissioner, 800 F.2d 987, 988 (10th Cir. 1986) (also affd. by six additional circuits); Mayerson v. Commissioner, 47 T.C. 340, 348-349 (1966).

The notice of deficiency adequately described the basis for respondent's determination as excessive ordinary and necessary business expense deductions. It fairly advised petitioner that a deficiency was determined. It specified the year as 1990, and it contained a comprehensive list of amounts by category (13 in all) that are identical to petitioner's Schedule C categories. See Hustead v. Commissioner, T.C. Memo. 1994-374, affd. without published opinion 61 F.3d 895 (3d Cir. 1995) (notice of deficiency clearly served to advise the taxpayers which of their claimed deductions had been disallowed); Burnside v. Commissioner, T.C. Memo. 1994-308 (notice of deficiency which specified the years, amount of deficiencies, and additions to tax complied with section 7522(a) and (b)(1)).

Petitioner attempts to shift the burden of proof to respondent under Rule 142(a) by arguing that respondent first raised the "duplication" grounds at trial. That is not so. Respondent's counsel stated that she made several attempts prior to trial to communicate precisely this point to petitioner. Furthermore, respondent's Trial Memorandum, filed May 25, 1995, explained that certain expenses were duplicated. Petitioner had

ample notice of respondent's duplication grounds. Mayerson v. Commissioner, 47 T.C. at 349.

Accordingly, we conclude that the notice of deficiency was not arbitrary and that the burden of proof with respect to the disputed issues remained with petitioner.

B. Testimony of Alan Hull

In his answering brief, petitioner contends that the testimony of respondent's witness, Alan Hull, should be rejected by the Court. While petitioner did not object to Mr. Hull's testimony at trial, he argues that Mr. Hull lacked the necessary foundation to testify because he was not involved in the audit or the issuance of the deficiency notice. We disagree.

Mr. Hull is a Technical Advisor to the IRS District Counsel. He has been an IRS employee for 18 years and is a Certified Public Accountant in Colorado. Mr. Hull, who had reviewed petitioner's records, the IRS administrative file, and the stipulation of facts with attached exhibits, was called as respondent's witness to explain which of petitioner's expenses were duplicated or otherwise disallowed. He was a qualified, competent, and thorough witness who gave reliable and detailed testimony.

Tax Court trials are conducted according to the rules of evidence applicable in trials without a jury in the United States District Court for the District of Columbia. Sec. 7453; Rule 143(a). These rules include the Federal Rules of Evidence.

Conti v. Commissioner, 99 T.C. 370, 373 (1992), affd. 39 F.3d 658 (6th Cir. 1994). Departing from these rules would remove the certainty of what this Court may consider in finding the facts. Snyder v. Commissioner, 93 T.C. 529, 531-532 (1989).

Fed. R. Evid. 602 requires that the witness have personal knowledge of the matter to which he testifies. Mr. Hull testified that petitioner duplicated certain business expense deductions. He based his conclusions on his analysis of detailed computer records of the locksmith business expenses supplied by petitioner--records that petitioner acknowledged were so comprehensive as to create an audit trail. Thus, Mr. Hull had personal knowledge of the matters about which he testified. He need not have been involved in the audit or the issuance of the deficiency notice in order to have first-hand knowledge.

Fed. R. Evid. 103(a)(1), the controlling rule for objections, requires that "a timely objection or motion to strike appear of record". An objection that is not timely made generally is waived. United States v. Jamerson, 549 F.2d 1263, 1266-1267 (9th Cir. 1977). Petitioner's objection to Mr. Hull's testimony was first made in his answering brief and not at the trial. It is untimely and, therefore, treated as waived. Moreover, it lacks merit.

II.  Disallowance of Claimed Schedule C Business Expense
Deductions

As previously indicated, petitioners claimed total Schedule
C business expense deductions of $117,871 on their 1990 Federal
income tax return.  Of that total amount respondent allowed
$4,026 for repairs, travel, meals and entertainment, and
$69,085.91 with respect to the other claimed expenses.
Respondent disallowed $44,759.09, i.e., $32,888.92 of duplicated
expenses and the remainder attributable to nondeductible personal
expenses, incorrect depreciation, a moving expense, or the
incorrect basis used to compute a loss on an automobile.

A.  Duplicated Expenses

In addition to the expenses claimed for repairs, travel,
meals and entertainment, petitioner claimed the following
expenses on Schedule C relating to his locksmith business:

| Expense | Amount Claimed |
| --- | --- |
| Advertising | $2,739 |
| Car and truck | 8,280 |
| Depreciation | 22,476 |
| Insurance | 3,632 |
| Interest | 2,729 |
| Legal and prof. | 9,468 |
| Moving | 1,254 |
| Office expense | 10,101 |
| Other expense | 5,876 |
| Rent | 3,675 |
| Supplies | 22,830 |
| Taxes | 11,686 |
| Utilities | 9,099 |
| Total | $113,845 |

Petitioner is allowed a deduction for the ordinary and necessary expenses paid or incurred in carrying on his trade or business.  Sec. 162.  It is clear that a business expense incurred only once cannot be claimed twice.  Deductions are a matter of legislative grace, New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934), and petitioner has the burden of proving that he is entitled to any deductions claimed.  Rule 142(a); Welch v. Helvering , 290 U.S. 111 (1933).

Petitioner acknowledged at trial that some of the expenses he claimed were duplicated.  He indicated that when he hastily prepared the Federal income tax return on or about April 15, 1991, he may have forgotten that he had transferred the MYM expense items into the DAC system in December 1990.

The evidence shows that petitioner deducted various expenses included in the MYM system twice, once as deductions based on the MYM system and a second time when the same expenses were transferred to the DAC system and included as deductions claimed based on the DAC system.  The duplicated expenses included on petitioner's Schedule C for 1990 are as follows:

| Expense | Amount Duplicated |
|---|---|
| Advertising | $637.47 |
| Car and truck | 1,076.64 |
| Insurance | 1,327.26 |
| Legal and prof. | 3,440.00 |
| Moving | 1,254.00 |
| Office expense | 2,778.84 |
| Other expense | 2,540.96 |
| Rent | 1,575.00 |
| Supplies | 8,969.29 |

| | |
|---|---|
| Taxes | 6,150.72 |
| Utilities | 3,138.74 |
| Total | $32,888.92 |

Accordingly, we sustain respondent's disallowance of the duplicated expenses.

B.  Personal Allocation of Expenses

(1) Utilities

During 1990, petitioners utilized 50 percent of their residence located in New Jersey for personal use and allocated 50 percent of the use to petitioner's Schedule C locksmith business. On the Schedule C for the business $9,099 was deducted for utilities.  Of that amount $3,138.74 claimed for utilities was duplicated.  Of the remaining amount of utilities deducted, $1,158.26 was attributable to utilities for petitioners' personal residence.  Because petitioner used the residence 50 percent for his business, only $579.13 is deductible on Schedule C.  The other $579.13 is a nondeductible personal expenditure.  Sec. 262. Petitioners presented no evidence that respondent's calculation of the portion of the utilities attributable to personal use was incorrect.  Therefore, respondent is sustained as to this adjustment.

(2)  Insurance

According to petitioners' Federal income tax return, petitioner used a van 100 percent for business use and a vehicle 56 percent for business use.  On Schedule C the amount of $3,632

was deducted for insurance. Of that amount $1,327.26 was duplicated. The remaining amount of insurance, after subtracting the duplication, was attributable to insurance on petitioners' two vehicles, one being used exclusively for the Schedule C business and the other one being used 56 percent for business use. The portion of the insurance attributable to the personal use of one of petitioners' vehicles is not deductible because it is a nondeductible personal expenditure. Respondent determined that the portion of the insurance expense attributable to personal use was $507.10. Petitioners presented no evidence that respondent's calculation was incorrect. Therefore, respondent is sustained as to this adjustment.

(3) Car and Truck Expense

On Schedule C petitioners deducted car and truck expenses in the amount of $8,280 of which $1,076.64 was duplicated and $2,301 was a payment for the lease of a Chevrolet van. The remaining expenses of $4,902.36 deducted on Schedule C were not allocated by petitioners between business and personal use, even though one of the vehicles was used 44 percent for personal use. Petitioners should have allocated the expenses between business and personal use. Consequently, they are not entitled to deduct expenses of $1,078.52, the amount allocated by respondent to personal use of one of the vehicles.

(4) <u>Taxes</u>

Petitioners deducted $11,686 for taxes on Schedule C for the business. Of that amount $6,150.72 was duplicated. Of the remaining amount of taxes deducted, $2,540 was attributable to sales taxes paid by petitioner in his Schedule C business which are deductible in full on Schedule C, and $2,994 was attributable to real property taxes paid by petitioners on their personal residence. On their Schedule A, petitioners deducted real estate taxes paid on their personal residence in the amount of $2,452. Since petitioners used the residence 50 percent for business, $1,497 is deductible on Schedule C and the remaining $1,497 is deductible on Schedule A, instead of the $2,452 claimed by petitioners on Schedule A.

(5) <u>Interest</u>

On Schedule C for the business, petitioner deducted $2,729 for interest. Interest of $1,864.75 paid to Midatlantic Bank was attributable to the mortgage on petitioners' personal residence. Because the residence was used 50 percent for business, only $932.38 is deductible on Schedule C. The remaining $932.37 is deductible on Schedule A as an itemized deduction.

C. <u>Depreciation</u>

Petitioners claimed depreciation deductions in the total amount of $22,476 for 1990. This amount included depreciation for a Chevrolet van, a Chevrolet Cavalier, and the Wyoming locksmith shop. The amount of $6,136.38 was correctly

disallowed.  Thus the correct allowable depreciation is $16,339.62 instead of $15,995.11 allowed by respondent.

Section 167(a) allows as a depreciation deduction a "reasonable allowance for exhaustion, wear and tear (including a reasonable allowance for obsolescence) -- (1) of property used in the trade or business, or (2) of property held for the production of income."  The burden of proving the claimed depreciation deductions rests with petitioners.  Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); see Hamilton & Main, Inc. v. Commissioner, 25 T.C. 878, 883 (1956).  In order to meet their burden, they must affirmatively establish the cost or other basis of the assets, their age, condition, remaining useful life, and the portion of their cost or other basis which has been recovered in prior years.  O. Bee, Inc. v. Commissioner, T.C. Memo. 1959-160; Moore v. Commissioner, a Memorandum Opinion of this Court dated Aug. 14, 1953; see Smith v. Commissioner, 31 T.C. 1, 7 (1958).

(1)  Chevrolet Van

Petitioner leased a Chevrolet van and placed it in service in his locksmith business on December 20, 1990.  Depreciation was claimed on Schedule C for the van in the amount of $1,540.  Petitioner also claimed a deduction for lease payments in the amount of $2,301 on the 1990 Federal income tax return for the lease of the van.  Petitioner testified that he did not treat the lease as a purchase, but as a lease, and admitted that he was not

entitled to depreciate it. Therefore, petitioners are allowed to deduct their lease payments of $2,301 for 1990. However, they are not allowed a depreciation deduction.

(2) Chevrolet Cavalier

Petitioner claimed a section 179 deduction of $2,660 for the Cavalier. Respondent disallowed this deduction, and instead allowed depreciation of $1,347.78.

To claim a section 179 deduction, petitioner must have acquired the property by purchase for use in the active conduct of his trade or business. Sec. 179(d); Campana v. Commissioner, T.C. Memo. 1990-395 (car purchased as family car and later also used in taxpayer's trade or business does not qualify for section 179 deduction).

Petitioner did not purchase the Cavalier for use in his locksmith business. He purchased it for personal use on November 1, 1986, and subsequently converted it to 56 percent business use nearly 4 years later. Thus, petitioner is not entitled to a section 179 deduction for the Cavalier.

We agree with respondent's allowance of depreciation in the amount of $1,347.78 for petitioner's business use of the Cavalier. Respondent accepted petitioner's 56 percent business use. Respondent arrived at her depreciation figure by reducing petitioner's basis in the Cavalier from $13,500 (cost) to $9,627 (fair market value) and by allocating 56 percent of the reduced basis to business use. Petitioner offered no evidence as to the

Cavalier's fair market value. Respondent relied on the National Automobile Dealers Association (NADA) used car guide for the fair market value.

The basis of property which has not been used in the trade or business and which is thereafter converted to such use is the lesser of fair market value on the date of conversion or the adjusted basis on the date of conversion. Sec. 1.167(g)-1, Income Tax Regs. Because petitioner converted the Cavalier to business use, the appropriate basis for depreciation is fair market value. Petitioner provided no evidence as to the Cavalier's fair market value on June 1, 1990, the date of conversion. Consequently, respondent's valuation is sustained. See Lillis v. Commissioner, T.C. Memo. 1983-142, affd. without published opinion 740 F.2d 974 (9th Cir. 1984) (taxpayers failed to carry their burden of proof as to amount claimed for depreciation where no evidence was introduced to establish basis or other component of their depreciation formula); see also Boggs v. Commissioner, T.C. Memo. 1981-224 (the Commissioner's estimate of salvage value based on the NADA guide was sustained where the taxpayer failed to introduce evidence to refute it).

(3) Wyoming Locksmith Shop

Petitioner claimed depreciation of $3,300 for the Wyoming locksmith shop. Respondent does not challenge petitioner's entitlement to depreciation. Rather, the parties disagree as to the amount of depreciation to be allowed. Petitioner placed the

locksmith shop in service on December 24, 1990. He calculated the $3,300 amount of depreciation using the 150 percent declining balance method, a 15-year recovery period, and half year convention. Respondent allowed petitioner 1 month's depreciation in the amount of $15.84 based on a determination that the locksmith shop is nonresidential real property. Hence, in effect, respondent argues that the straight line method, 31.5 year recovery period, and mid-month convention apply.

Section 168[5] controls the computation of allowable depreciation. Depreciation is to be computed by using the applicable depreciation method, the applicable recovery period, and the applicable convention. Sec. 168(a).

Petitioner offered no testimony or other evidence to support his selection of depreciation method, recovery period, or convention for reporting the locksmith shop depreciation. He thus failed to carry his burden of proof to refute respondent's depreciation adjustment. See Stafford v. Commissioner, T.C. Memo. 1992-637 (where taxpayer failed to introduce any evidence to establish that respondent's depreciation calculations based on a shorter recovery period were incorrect, taxpayer did not overcome the presumption of correctness of those adjustments); Barron v. Commissioner, T.C. Memo. 1992-598 (where the record

---

[5] Sec. 168 as amended by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 201, 100 Stat. 2085, 2121, for property placed in service after Dec. 31, 1986, and in taxable years ending thereafter.

contained no evidence that a shorter recovery period was more appropriate, taxpayers failed to carry their burden of proof). Therefore, we sustain respondent as to the $15.84 of allowed depreciation.

D.  Moving Expenses

On his Schedule C, petitioner claimed moving expenses in the amount of $1,254 attributable to his locksmith business assets. Respondent disallowed the entire amount on the ground that the expense was a contingent liability in 1990.

On January 10, 1991, petitioners paid North Park Transportation Co. $1,253.37 for shipment of the locksmith business assets from New Jersey to Wyoming.  The bill of lading, dated December 21, 1990, issued by North American Van Lines shows that payment in the amount of $3,349.98 was to be "C.O.D.".  Two Consignee Memos, dated January 8, 1991, in the total amount of $1,253.37, were issued by North Park Transportation Co.  Both were presented to petitioners on January 10, 1991, stamped "Driver collect on Delivery".  Both bear the handwritten notation "paid" and petitioners' check number.

Petitioner elected the accrual method of accounting for the business.  Sec. 446.  Under this method, an expense is deductible when all events have occurred to establish the fact of liability, the amount can be determined with reasonable accuracy, and economic performance has occurred.  Sec. 461(h)(1), (4); United States v. General Dynamics Corp., 481 U.S. 239, 243 (1987)

(accrual method taxpayer may not deduct a contingent liability); Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 287 (1944) (amount must be definite); Lucas v. North Texas Lumber Co., 281 U.S. 11, 13 (1930) (liability must be unconditional); Levert v. Commissioner, T.C. Memo. 1989-333 (taxpayer's contractual liability was contingent because it depended on completion of the promised services); sec. 1.461-1(a)(2), Income Tax Regs.

Economic performance occurred on January 10, 1991, when petitioner's goods were delivered to Wyoming.  Furthermore, petitioner's liability to pay the moving expenses was contingent under both parts of the "all events test" until January 10, 1991. The obligation to pay the carrier for shipment was contingent on delivery of petitioner's goods to Cheyenne, Wyoming.  Had delivery not occurred, petitioner would not have been obligated to pay the carrier.  Delivery occurred on January 10, 1991. Moreover, the amount of the liability was not reasonably certain or definite until the Consignee Memos were presented to him for payment on January 10, 1991.  The anticipated freight cost, according to the bill of lading, was $3,349.98.  The actual cost shown on the Consignee Memos was $1,253.37, which includes a 50 percent discount not reflected on the bill of lading.  Hence the amount of petitioner's liability to the carrier was not reasonably certain until the Consignee Memos were presented to

petitioner on January 10, 1991. Accordingly, we sustain respondent's disallowance of the claimed moving expenses.

E. Loss on Disposition of Chevrolet Cavalier

Petitioner claimed a loss in the amount of $8,350 when the Cavalier was traded in for the leased van. He calculated the loss by using a cost basis of $13,500. Respondent reduced the amount of this loss to $2,043.34. Respondent arrived at this figure by reducing petitioner's basis in the Cavalier from the $13,500 cost basis to the $9,627 fair market value based on the NADA used car guide. Respondent accepted petitioner's 56 percent business use of the Cavalier and allocated $5,391.12 of the fair market value basis to business use.

The basis for determining a loss on the disposition of property used in a trade or business is "the cost * * *, except as otherwise provided in this subchapter". Secs. 165(a), (b) and (c), 1011, 1012. However, losses on personal property are not deductible. Sec. 262. The depreciable basis for property converted from personal to business use is the lesser of cost or fair market value at the time of conversion. Sec. 1.167(g)-1, Income Tax Regs. Thus, the basis for determining a loss under section 165 for an automobile converted from personal to business use is the lesser of cost or fair market value. Gross v. Commissioner, T.C. Memo. 1972-221. To conclude otherwise would allow petitioner through conversion to recognize a loss which was realized during the period of personal use. Id. Therefore, we

sustain respondent's position as to the amount allowed for the loss on the Cavalier.

III.  Section 6662(a) Accuracy-Related Penalty

Respondent determined that petitioners are liable for the accuracy-related penalty.  Section 6662(a) and (b)(1) provide that an amount equal to 20-percent of that portion of the underpayment that is attributable to negligence or disregard of rules or regulations shall be added to the tax.  Negligence is the failure to exercise due care or to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985).  Negligence includes failure to make a reasonable attempt to comply with provisions of the Internal Revenue Code.  Sec. 6662(c). Petitioner has the burden of proving that respondent's determination is in error.  Rule 142(a); Bixby v. Commissioner, 58 T.C. 757 (1972).

Taxpayers have a duty to keep accurate records and to carefully prepare their returns.  See secs. 6001, 6011; secs. 1.6001-1(a), 1.6011-1(b), Income Tax Regs.

Petitioner overstated 13 out of 16 items listed on his Schedule C primarily by duplication.  Most of the duplication errors occurred when he prepared the scratch pads, which he then used to compute total deductible expenses.  As petitioner listed expenses on the scratch pads, he forgot that the DAC system included the MYM expenses.  He transferred the MYM expenses into

the DAC system on December 31, 1990. As a result of his forgetfulness, petitioner listed both the MYM expenses and the DAC expenses on the scratch pads, added them together, and caused the computer to copy the inflated figure onto his Schedule C.

There is no evidence that petitioner attempted to verify whether the MYM expenses were already included in the DAC totals, as in fact they were. On the contrary, petitioner testified that "I knew I had to get this return done. It was April 15, and * * * I had to get those figures in there. And I just kind of -- just jumped into it and started keypunching".

Petitioner personally created the DAC Ledger, DAC Accounting Summary, DAC Accounts Payable Listing, and DAC Trial Balance on his computer prior to April 15, 1991. No one else made entries for petitioner. If copies of those records were unavailable on April 15, 1991, petitioner had only to cause the computer to generate another copy. Petitioner should have reviewed his own computer records, as both this Court and respondent have done, to see that the MYM expenses should not have been listed on the scratch pads in addition to the DAC expenses. There is no explanation in the record as to why petitioner did not do so other than his own testimony that his duplication errors were the result of haste.

Petitioner's contention that his records were complete and carefully prepared is self-serving and not supported by the evidence. The scratch pads were a key component of his tax

preparation because the totals were merely copied onto the matching lines of the Schedule C.  The scratch pads were carelessly prepared in petitioner's admitted haste to complete his tax return.

Petitioner's carelessness also caused him to fail to properly allocate the personal use portion of expenses for utilities, home mortgage interest, vehicle insurance, car and truck expenses, and property taxes.

Furthermore, petitioner's carelessness caused him to claim both depreciation and the rental expenses for the leased van.

In our judgment petitioner's conduct was neither reasonable nor prudent.  His numerous errors are due to his failure to keep accurate records and to verify the correct amount of his business expenses.  Therefore, we conclude that respondent's imposition of the section 6662(a) penalty for negligence was justified.

To reflect the concessions made by respondent and our conclusions with respect to the disputed issues,

Decision will be entered

under Rule 155.