T.C. Memo. 1996-489


UNITED STATES TAX COURT


THE CLEVELAND TRENCHER COMPANY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14558-93.                    Filed October 30, 1996.


Metin Aydin (an officer), for petitioner.

<u>Marc A. Shapiro</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


BEGHE, <u>Judge</u>:  Respondent determined a deficiency of
$56,609 in petitioner's income tax for the taxable year ended
September 30, 1989.  After concessions, the sole issue for
decision is whether petitioner is entitled to a deduction for
$168,099 of commission expense that respondent disallowed.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of fact and the exhibits thereto are incorporated herein.

The Cleveland Trencher Co. (petitioner) is an Ohio corporation whose principal place of business was in Cleveland when the petition was filed. Petitioner is an accrual basis taxpayer.

Petitioner, established in 1904, is in the business of manufacturing and selling trenching machines (also called ditching machines or trenchers). Trenchers are tractorlike machines used to dig ditches for pipelines, irrigation channels, and other purposes.

A corporation called A-A-H International Trading Co., Inc., was incorporated in Ohio in 1984 "To operate an export, import business and any lawful act or activity for which corporations may be formed under * * * Ohio" law. Its corporate charter was revoked in 1985.

On October 13, 1986, petitioner entered into an agreement (the first commission agreement) with "AA&H International" (AA&H); the agreement was executed on behalf of AA&H by Metin Aydin (Mr. Aydin). On March 2, 1987, petitioner entered into another agreement (the second commission agreement) with AA&H and Mr. Aydin. The second commission agreement called for payments

to be made by petitioner to AA&H or Mr. Aydin and was signed twice by Mr. Aydin, in his personal capacity and on behalf of AA&H. The second commission agreement does not refer to the first commission agreement, but the two agreements cover similar subject matter, the entitlement to payments in respect of the supply and sale of trenching machines to a Turkish Government agency (first commission agreement) or the Government of Turkey (second commission agreement).

The first commission agreement refers to BID 86-8203 and provides for a schedule of payments to AA&H of all proceeds in excess of specified amounts received for three types of trenching machines, the specified amounts ranging from $118,00 to $122,000 per unit, f.o.b. factory. For example, if petitioner should sell one of its least expensive trencher machines to the Turkish Government agency for $160,000 with the assistance of AA&H, petitioner would be obligated under the commission agreement to remit $42,000 ($160,000 - $118,000) to AA&H. Petitioner agrees to absorb any penalties imposed for late payment provided that delays are not caused by situations beyond its control, and AA&H agrees to pay from its share of the "proceeds all commissions, consulting fees, freight and other miscellaneous expenses related to this contract".

The second commission agreement fixes the liability to make payments under the underlying sales contract, specifies that its

terms of payment to Mr. Aydin or AA&H are "irrevocable, sight letter of credit confirmed by a major U.S. Bank", and provides for a delay in payment of no more than 3 work days after funds are received by petitioner. The schedule of payments for the three types of machines is identical to that under the first commission agreement, except that the threshold of the obligation to make payments with respect to the most expensive, heavy-duty machine--Model 7036-SD--is raised from $122,000 to $128,000 per unit. The second commission agreement contains four pairs of disjunctive references to "Metin Aydin or AA&H International": The preamble referring to the following terms of payment to Mr. Aydin or AA&H for "sales he secures for the Government of Turkey"; petitioner's acceptance of liability "for amounts due" to Mr. Aydin or AA&H when an acceptable letter of credit is received; the agreement of Mr. Aydin or AA&H to allow delay in payment of no more than 3 business days after funds are received by petitioner; and Mr. Aydin's two signatures on behalf of himself and AA&H.

In October 1987, Mr. Aydin, having sold trenching machines for petitioner in previous years as a sales representative, became the owner and sole shareholder of petitioner. He owned 100 percent of the stock of petitioner during the taxable year ended September 30, 1989. His acquisition of petitioner occurred against expert advice questioning his wisdom in doing so.

Petitioner's financial posture was and continues to be shaky. Mr. Aydin's purchase of petitioner saved, at least temporarily, the jobs of several individuals.

Mr. Aydin has a valid "green card", which was issued to him in 1972, confirming his status as a resident alien of the United States. Mr. Aydin is of Armenian descent and continues to use a Turkish passport. Mr. and Mrs. Aydin filed a joint U.S. individual income tax return on Form 1040A for the calendar year 1989 and are cash basis taxpayers. Mr. and Mrs. Aydin reported no income from AA&H on that joint return.

AA&H has a one-room office in petitioner's building in Cleveland. Mr. Aydin carried out extensive business for AA&H. AA&H never filed any U.S. income tax returns. Although evidence was presented at trial that AA&H did business in Turkey, there is no evidence that it was registered to do business there. If AA&H had any books and records at all for the years 1988 and 1989, Mr. Aydin sent them to Turkey.

Petitioner at some time in 1986 entered into an agreement with the General Directorate of Rural Services, Republic of Turkey (Turkish Government) to build 10 Cleveland Trencher trenching machines for $1,797,540. Petitioner entered into a second agreement, dated November 1, 1988, with the Turkish Government to build 25 Cleveland Trencher trenching machines for $4,202,471.

The record contains a credit memo on petitioner's letterhead to AA&H dated October 25, 1989, bearing an order date of October 24, 1989, and referring to a "commission credit for Turkey 25 contract" in the amount of $1,176,691.86. The record contains a series of documents beginning with an advice dated July 14, 1988, from Chase Manhattan Bank in the United States to Chase Manhattan Bank, Istanbul, Turkey, to pay the bid bond under the second agreement for the sale of 25 trenching machines, shipping and insurance documents indicating that at least 23 of the 25 trenching machines under the second sales agreement had been shipped during the fiscal year ended September 30, 1989, culminating in petitioner's invoice to the Turkish Government that, as of February 27, 1990, the balance due petitioner on the sale of 25 trenching machines amounted to $1,327,980.84, and that, as of March 9, 1990, petitioner had not yet been paid this amount.

On petitioner's Form 1120, U.S. Corporation Income Tax Return, for its fiscal year ending September 30, 1989, petitioner accrued a deduction of $1,176,692 for commissions. Respondent disallowed $168,099 of the claimed deduction on the ground that petitioner had not established that this amount had been paid or incurred for the purpose designated or that it qualified as a

business expense under sections 162 and 267.[1]  Although Schedule
M to the return shows a deficit in retained earnings of $778,535
at the beginning of the fiscal year, no net operating loss
deduction is claimed on the face of the return.  Payment of the
$168,099 had not been made at the time of the trial and
apparently has still not been made.  At the time of trial,
petitioner still owed approximately $800,000 as commissions and
interest on sales of trenching machines to the Turkish
Government.

## OPINION

Respondent's determinations are presumed to be correct, and
petitioner bears the burden of showing that they are wrong.  Rule
142(a).  Petitioner has not carried its burdens of proof and
persuasion that it is entitled, under sections 162 and 267, to
the balance of the commission deduction expense that respondent
disallowed.

## Issue 1.  Accrual of Expense Deduction for Commission Balance

Petitioner asserts that the disputed claimed deduction of
$168,099 represents accrued commissions and interest to AA&H from
sales that occurred in the tax year ending September 30, 1989.
Respondent argues that petitioner has not satisfied the all

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code and all Rule references are to the Tax
Court Rules of Practice and Procedure.

events test, as modified by the economic performance test, for the deduction at issue.

Whether a business expense has been "incurred" so as to entitle an accrual basis taxpayer to deduct it under section 162(a) has long been governed by the "all events" test. United States v. General Dynamics Corp., 481 U.S. 239, 242 (1987); United States v. Hughes Properties, Inc., 476 U.S. 593, 600 (1986); sec. 1.461-1(a)(2), Income Tax Regs. In 1984, Congress added to the Internal Revenue Code a new section 461(h) that provides that in certain circumstances the all events test is not met until "economic performance" occurs. United States v. General Dynamics Corp., supra at 243 n.3; Halle v. Commissioner, T.C. Memo. 1996-116; Spitzer Columbus, Inc. v. Commissioner, T.C. Memo. 1995-397; sec. 1.461-4, Income Tax Regs. Here economic performance occurred as AA&H provided to petitioner the services covered by petitioner's obligation. Sec. 461(h)(2)(A)(i); sec. 1.461-4(d)(2), Income Tax Regs.[2] Although

---

[2]Petitioner, although having listed the deduction as a commission expense deduction on its income tax return, claims on brief that the disputed deduction was of interest on what it owed to AA&H. If the disputed amount is interest, then economic performance occurred as the interest cost economically accrued. Sec. 1.461-4(e), Income Tax Regs. However, petitioner adduces as evidence for the assertion that the disputed amount is interest only a credit memo of petitioner allowing a commission credit to AA&H for the Turkey 25 Contract of $1,176,691.86. Petitioner has not shown how the interest economically accrued, nor how, to the extent that interest did accrue, it is not included in as much of the total deduction as respondent has allowed. One of

(continued...)

we have no doubt that Mr. Aydin procured the sales of trencher machines to the Turkish Government, the record is obscure as to precisely what services AA&H provided and when it provided them, so as to give rise to the rights of AA&H or Mr. Aydin to receive commission payments. There is evidence that at least some necessary services had not been provided at the end of petitioner's fiscal year ended September 30, 1989, that the sale of at least two trencher machines under the second agreement had not been completed, and that petitioner had not received a substantial portion of the payments due from the Turkish Government. The credit memo that petitioner produced does not demonstrate performance during the taxable year.[3] We therefore

---

[2](...continued)
petitioner's witnesses at trial testified that petitioner owed to AA&H at that point $800,000, including interest, which is inconsistent with the view that all of the deduction which respondent allowed, plus this additional disputed amount, consists entirely of interest. In characterizing the deduction at trial, Mr. Aydin did not mention that any of it was interest.

[3]Additionally, it is arguable that petitioner's liability, to the extent that respondent did not recognize it as a business expense under secs. 162 and 267, did not arise from an arm's-length arrangement between petitioner and AA&H and so cannot be deducted. See Bissey v. Commissioner, T.C. Memo. 1994-540; Van Valkenburgh v. Commissioner, T.C. Memo. 1967-162.

Petitioner in its trial memorandum said that it had, in each of the years 1987, 1988, and 1989, a tax loss carryover in excess of the amount in dispute. Although Mr. Aydin made cursory mention of this at trial, he did not pursue it then, and petitioner has made no argument to that effect on brief. We hold petitioner to have waived the argument and therefore do not consider whether, in view of Mr. Aydin's acquisition of

(continued...)

find that petitioner has not carried its burden of showing that the all events test was satisfied during the taxable year.

Issue 2.  Related Party Objection to the Deduction

The parties dispute what kind of business entity AA&H was and how great Mr. Aydin's ownership interest in it was. Respondent claims AA&H is Mr. Aydin's sole proprietorship. Petitioner claims that AA&H is a Turkish business entity, of unspecified nature, which operated as petitioner's agent in the Republic of Turkey as a "ghost company" (trading in Turkey with an address and attorney in Turkey), in which Mr. Aydin held a 25-percent interest with an option to purchase an additional 12.5-percent.

AA&H is either a sole proprietorship, a partnership, or a corporation.  The record does not enable us to determine which of these it is.[4]  If AA&H were a sole proprietorship, then it would be identical for tax purposes with Mr. Aydin, who, as a resident

---

[3](...continued)
petitioner, sec. 382 renders petitioner unable to claim a net operating loss deduction for any such carryover.  Cf. Berry Petroleum Co. & Subs. v. Commissioner, 104 T.C. 584 (1995).

[4]Turkey has the panoply of forms of business enterprise characteristic of civil law systems, including corporations (Anonim Şirketler), limited liability companies (Limited Şirketler), general partnerships (Kollektif Şirketler), limited partnerships (Komandit Şirketler), and sole proprietorships. Schneider & Bilgen, Foreign Investment Laws in the Republic of Turkey:  A Model for Reform, 5 Transnatl. Law. 99, 116-117 (1992).  Mr. Aydin testified to AA&H's being a "ghost company", but we have no way of knowing to which of these forms that characterization would correspond.

alien, is a U.S. person. Sec. 7701(a)(30)(A). Since Mr. Aydin owns more than 50 percent of petitioner, he and petitioner would be related taxpayers under section 267(b)(2). Mr. Aydin has the burden of establishing that he is not a cash basis taxpayer, North Am. Serv. Co. v. Commissioner, 33 T.C. 677, 696-697 (1960),[5] remanded on compromise, 7 AFTR 2d 1244, 61-1 USTC par 9352 (7th Cir. 1961), cited for this point in Liflans Corp. v. United States, 182 Ct. Cl. 825, 841, 390 F.2d 965, 974 (1968), and he has not met that burden. Indeed, his Federal personal income tax return for 1989 indicates that he is a cash basis taxpayer.

Petitioner admits that the subject $168,099 was not paid during the year in issue. Neither Mr. Aydin nor AA&H included the subject commission in income.

Section 267(a)(2) does not allow a payor to deduct an amount before it is included in the payee's gross income where: (a) By reason of the payee's method of accounting, the amount is not gross income to the payee until paid, and (b) the payor and payee are related taxpayers within the terms of section 267(b). If AA&H is a sole proprietorship, both these requirements would be

---

[5]The Court of Appeals for the Seventh Circuit in North American Service Co. v. Commissioner ordered this case remanded and disposed of in accordance with a stipulated settlement. As this Court has previously noted, this remand does not affect the vitality of the opinion as an expression of the Tax Court's views on the issue involved. See Cosmopolitan Credit Corp. v. Commissioner, T.C. Memo 1972-103 n.4.

met, and section 267 would prevent the deduction of the $168,099 in issue.

Respondent, in seeking to establish that AA&H is a sole proprietorship, adduces Turkish law that obliges Turkish business entities to register in the trade register of their domicile, under pain of fine. Turkey, Commercial Code [Türk Ticaret Kanunu], Law No. 6762 of June 29, 1956, arts. 29, 35, Laws of the Republic of Turkey [Türkiye Cumhuriyeti Kanunları] 5245, 5254-5255 (ed. Coker & Kazancı 1984). Under Rule 146, the determination of foreign law is an issue of law for this Court, and we may consider any relevant material or source, whether or not submitted by a party or otherwise admissible in evidence. See also Fed. R. Civ. P. 44.1; Pittway Corp. v. United States, 88 F.3d 501, 504 (7th Cir. 1996). As we read the Turkish law, it, like its Swiss antecedent, OR, Schweizerisches Obligationenrecht [Swiss Code of Obligations], arts. 927-943, applies just as much to sole proprietorships as to corporations and partnerships. Cf. Schneider & Bilgen, Foreign Investment Laws in the Republic of Turkey: A Model for Reform, 5 Transnatl. Law. 99 (1992). If, therefore, AA&H and Mr. Aydin failed to register in Turkey, as respondent seeks to establish, that tells us nothing about the form of organization of AA&H.

Respondent admits that the information about the Turkish law which she submitted to us is not admissible as evidence, and we

have not used it as such.  Rule 146 permits us to consider materials relating to foreign law whether or not they are admissible in evidence.  Consequently, we will deny petitioner's motion to strike the exhibit attached to respondent's brief that contained references to Turkish law.  In any event, we conclude nothing from respondent's information about Turkish law or our own research that helps us to decide this case.

Even if AA&H is an entity distinct from Mr. Aydin, such as a partnership or corporation, petitioner must show that the disputed amount sought to be deducted could not have been paid to Mr. Aydin, rather than to AA&H.  We have seen, supra pp. 3-4, that the second of the two commission agreements between petitioner and AA&H provided for payment to AA&H or Mr. Aydin. If the disputed amount could have been paid to Mr. Aydin, a cash basis taxpayer related to petitioner under section 267(b), then petitioner cannot take the deduction in the year at issue.  At trial, Mr. Aydin admitted that the amount in controversy related to both contracts with the Turkish Government and thus also to the second commission agreement between petitioner and AA&H, and that petitioner had to show that as of 1989 he no longer had the right to receive the payments in question, but petitioner has not done so.  As a result, petitioner's accrual of the deduction for the unpaid commission must be disallowed under section 267(a)(2).

Our disposition of the case on this ground makes it unnecessary for us to address whether AA&H was an entity such as a partnership or corporation, or the extent of Mr. Aydin's ownership interest in it.  We therefore need not consider whether AA&H was a foreign entity, so as to bring section 267(a)(3) into play.

For the foregoing reasons,

<u>An appropriate order and decision will be entered for respondent</u>.