T.C. Memo. 2011-107

UNITED STATES TAX COURT

LLOYD T. ASBURY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18443-05.                    Filed May 23, 2011.

Lloyd T. Asbury, pro se.

Miriam C. Dillard, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  Respondent determined the following income

tax deficiencies and additions to tax under sections 6651(f)[1] and

(a)(2) and 6654 for the years 1997 through 2002:

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

| Year | Deficiency | Additions to Tax Sec. 6651(f) | Sec. 6651(a)(2) | Sec. 6654 |
|------|-----------|-------------------------------|-----------------|-----------|
| 1997 | [1]$66,397 | $48,138 | $16,599 | [2]-0- |
| 1998 | 117,590 | 85,253 | 29,398 | $5,381 |
| 1999 | 88,408 | 64,096 | 22,102 | 4,279 |
| 2000 | 101,846 | 73,838 | 25,462 | 5,440 |
| 2001 | 82,410 | 59,747 | 20,603 | 3,293 |
| 2002 | 66,358 | 48,110 | 33,179 | 2,217 |

[1]Amounts are rounded to the nearest dollar.
[2]Respondent concedes the sec. 6654 addition to tax for 1997.

Petitioner, a decorated military hero, was a successful tax lawyer during the years in question whose life unraveled as the result of a gambling problem. The present case is, it is hoped, the last chapter in the resulting series of negative repercussions to petitioner.

After concessions made,[2] the issues for decision are:

(1) Whether petitioner failed to report dividends from his incorporated law practice for tax years 1997 through 2002. We hold that he did;

(2) whether petitioner is entitled to additional itemized deductions. We hold that he is;

---

[2]Petitioner conceded the following issues: (1) Failure to report dividends from sources other than his law practice for tax years 1997 through 2002; (2) failure to report interest income for tax years 1997 through 2002; (3) failure to report a premature taxable distribution from his pension account for tax year 1998; (4) failure to report income from Columbia Plantation Co., an S corporation in which he was a shareholder for tax years 2000 through 2002; (5) failure to report gambling winnings for tax years 1999, 2000, and 2002.

(3) whether petitioner is liable for the addition to tax under section 6651(f) for failure to file returns for 1997 through 2002. We hold that he is;

(4) whether petitioner is liable for the addition to tax under section 6651(a)(2) for 1997 through 2002 for failure to pay. We hold that he is; and

(5) whether petitioner is liable for the addition to tax under section 6654 for failure to make estimated payments for tax years 1998 through 2002. We hold that he is.

FINDINGS OF FACT

Petitioner resided in Florida when the petition was filed. Petitioner graduated from the United States Military Academy at West Point in June 1963 and began an illustrious military career that lasted more than 10 years. He received, among other decorations, the Silver Star and the Purple Heart for service in Vietnam.

A. Postmilitary Legal Career

Petitioner obtained several postgraduate degrees after serving in Vietnam. In May 1971 he completed a master's program in Paris, France, through Middlebury College. Petitioner was subsequently assigned to serve on the staff and faculty at West Point. During this assignment petitioner earned an M.B.A. in accounting and taxation at Fairleigh Dickinson University. In April 1976 petitioner resigned from the Army and entered law

school at the University of Florida.  In 1978 he completed his law degree and was admitted to the Florida Bar and began practicing in Jacksonville, Florida.  Petitioner was admitted to practice before this Court in 1979.

Petitioner had immediate success as an attorney.  His practice focused on taxation, estates, trusts, probate, and corporate law.  He served as chairman of the Tax Section of the Jacksonville Bar Association in 1984 and 1985.  After working for several years with a partner, he opened a solo practice in 1986.

Petitioner's financial troubles began after he started his solo practice.  He developed relationships with several clients who traveled regularly to Las Vegas to gamble.  Petitioner began traveling every 6 weeks for gambling junkets.  As substantial gambling losses accrued, petitioner's gambling habits affected other business decisions.  Petitioner relied on credit to cover his gambling losses, pursued high-risk investments, and mismanaged client funds.

During the years at issue, petitioner maintained four bank accounts at First Guaranty Bank.  He maintained a personal account under the name Lloyd T. Asbury or Elizabeth F. Asbury, his then wife.[3]  He also maintained an operating account, a payroll account, and a client trust account for the law firm under the name Lloyd T. Asbury Attorney at Law PA.  Petitioner

---

[3] Petitioner and his wife divorced subsequently.

also maintained two investment accounts at Paine Webber: One in the name of Lloyd T. Asbury Revocable Trust, FBO, and the other in the names of Elizabeth F. Asbury and Lloyd T. Asbury, JTWROS.

Petitioner regularly commingled client trust account funds with funds from other law firm accounts. He did not keep a separate file for each client transaction, and he did not reconcile accounts as required by the Florida Bar. He frequently shifted funds between his law firm accounts and personal accounts.

Petitioner was the only person with control over the law firm's client trust account. In 2001 the Florida Bar Association investigated petitioner's records relating to funds held in trust for his clients. Petitioner was unable to provide proper records to the Florida Bar, and his membership was suspended in November 2001. Petitioner resigned from the Florida Bar in January 2003.

On September 14, 2004, petitioner pleaded guilty to one count of the first degree felony of grand theft under Fla. Stat. Ann. sec. 812.014(2)(a)1., in connection with the mismanagement of client funds. On December 17, 2004, he was sentenced to 5 years' incarceration, 10 years' probation, 1,000 hours of community service, and a restitution payment of $357,000 to his clients. On March 2, 2005, petitioner began his period of incarceration; on March 11, 2009, he was released.

B.  IRS Adjustments

On June 30, 2005, respondent issued a notice of deficiency to petitioner for tax years 1997 through 2002 while petitioner was still incarcerated.  Petitioner neither filed individual Federal income tax returns for 1997 through 2002 nor made any estimated tax payments.  In addition, petitioner failed to file corporate Federal income tax returns for his corporation Lloyd T. Asbury Attorney at Law PA for the years 1998 through 2002.[4] Respondent prepared substitutes for returns (SFRs) under section 6020(b) for tax years 1997 through 2002.  Respondent determined that petitioner failed to report the following dividends from the law firm:

| Year | Dividends |
|------|-----------|
| 1997 | $203,333 |
| 1998 | 330,367 |
| 1999 | 256,165 |
| 2000 | 273,341 |
| 2001 | 239,152 |
| 2002 | 166,541 |

Petitioner also received income from interest; from dividends received from sources other than the law firm; from an S corporation in which he was a shareholder; from a distribution from his pension account; and from gambling winnings.

Respondent summoned petitioner's personal bank records and the bank records from his law practice in determining his income.

---

[4]Petitioner filed a corporate return for 1997 sometime in April 2002.

Respondent used the specific-item method to compute this income. Respondent counted as income the amounts of checks that were written to petitioner and deposited into his personal bank account, from his law firm's client trust account, or from his law firm's operating account. Respondent also included as income payments made to petitioner's family members, payments made on an obligation relating to petitioner's personal residence, and income reported by third-party payors. Most of petitioner's income is from checks written directly to him. Respondent refers to the income petitioner received from his law practice and through other sources as constructive dividends.

On October 3, 2005, petitioner timely petitioned this Court for redetermination of the deficiencies and additions to tax for the taxable years 1997 through 2002.

## OPINION

Petitioner bears the burden of proving by a preponderance of evidence that respondent's income tax deficiency determinations in the notice of deficiency are incorrect. See sec. 7491(c); Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Petitioner acknowledged that he failed to file tax returns and to pay taxes, including estimated taxes, for the years at issue. He filed requests for extensions of time to file tax returns for years 1997 through 2000 without payment, except for tax years 1998 and 2000 when he made a payment of $100 for each

year.  He stipulated that he received dividends from his law practice and from other sources for the years at issue.  He stipulated that he earned interest income for all years at issue and received a premature distribution from his pension account for 1998.  Finally, petitioner stipulated that he received income from an S corporation from 2000 through 2002 and from gambling winnings in 1999, 2000, and 2002.  Nevertheless, petitioner argues that he lacked the intent to evade taxes.

Petitioner also contests the inclusion in income of certain amounts he deposited into and then withdrew from his law firm's client trust and operating accounts.  Although petitioner admits that he wrongly deposited the funds into his law firm accounts, he argues that the funds originated from nontaxable sources.  Petitioner testified to the specific instances where he alleges respondent wrongly included in income money from different sources.  Respondent counters that petitioner has failed to introduce any credible evidence to support his argument that receipts from nontaxable sources were included in income.

I.   Constructive Dividends

Respondent asserts that constructive dividend income should be imputed to petitioner for amounts both from his law practice and from other sources for the years 1997 through 2002.

A constructive dividend arises when a corporation confers an economic benefit upon a shareholder without expectation of

repayment if the corporation has sufficient earnings and profits. Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1214 (5th Cir. 1978); Crosby v. United States, 496 F.2d 1384, 1388 (5th Cir. 1974); Truesdell v. Commissioner, 89 T.C. 1280, 1295 (1987). Corporate payments to a shareholder which confer personal benefits on the shareholder may constitute constructive dividends whether or not dividends are formally declared. Noble v. Commissioner, 368 F.2d 439, 442 (9th Cir. 1966), affg. T.C. Memo. 1965-84.

The evidence in this record clearly establishes that petitioner did not separate his personal transactions and expenses from those of his law firm. He paid personal expenses with corporate checks.

Through examinations conducted by the examining agent, in which petitioner's personal bank records and bank records for petitioner's law firm were summoned, the examining agent identified checks that were written directly to petitioner or payments made for his benefit from the bank accounts of the law firm. In addition, the examining agent was able to trace checks written directly to petitioner from his law practice into his personal bank accounts.

Consequently, we find that petitioner received constructive dividends regarding the transactions described herein and thus those dividends constitute gross income to him.

II.  Transactions at Issue

We will consider the deposits petitioner argues originated from nontaxable sources and the withdrawals he argues were not for his personal benefit.

A. Mortgage Payments

At trial petitioner argued that respondent wrongly included income mortgage payments made from his law firm operating account.  Petitioner has failed to produce any credible evidence that the payments made for his residence during tax years 1997, 1998, 1999, and 2000 were not for his personal benefit.  Accordingly, petitioner has not met his burden, and respondent's determination is sustained.

B.   Merrill Lynch

Petitioner argued that respondent wrongly included in income withdrawals from an investment account with Merrill Lynch.  After petitioner's father's death in 1996, the account stood in the joint names of petitioner and petitioner's brother.  Petitioner testified that neither he nor his brother removed funds for personal use, but for certain purposes including the care of their mother.  Petitioner testified that he was his mother's caretaker before his brother retired and lived with her.  Petitioner identified three withdrawals from the Merrill Lynch account, all dated August 11, 2000, of $5,000, $10,000, and $35,000.

Petitioner's Merrill Lynch account statements support his testimony that on August 11, 2000, he wrote one check to Lloyd T. Asbury PA of $5,000, and two checks to Lloyd T. Asbury PA Trust Account of $10,000 and $35,000. The firm's operating account records indicate that a deposit of $5,000[5] was made on August 11, 2000. The firm's client trust account records indicate that deposits of $10,000 and $35,000 were made on August 11, 2000.[6]

Petitioner's testimony contradicts earlier statements that his mother did not own the securities held in the Merrill Lynch account. Petitioner filed a petition in this Court on behalf of his mother in response to a notice of deficiency issued to her. In the petition, his mother alleged that she did not own the securities in the Merrill Lynch account. At trial of the present case petitioner did not establish who owned the securities or how the funds were used to care for his mother. Accordingly, petitioner has not met his burden, and respondent's determinations with respect to the Merrill Lynch transactions are sustained.

C.   <u>Check Held for Petitioner's Wife</u>

Petitioner contests the inclusion in income of a check for $68,512.81 from his firm's client trust account issued to his

---

[5]The deposit slip reflects a returned item charge of $5. The total deposit was $5,005.

[6]The deposit slips also include returned item charges of $5. The total deposit amounts were $10,005 and $35,005.

then wife. Petitioner explained that his then wife and two of her sisters, Ruth Loot and Barbara Milacki, each received a check for $68,512.81 as part of a distribution from an estate passed on to them through their mother. Petitioner's wife and her sisters placed these moneys in the firm's client trust account for the purpose of reserving funds for their mother's care. The firm's client trust account later issued three checks, each made payable to three payees; namely, his then wife and her sisters.

Petitioner's firm's client trust account records show copies of three checks each made out to Mrs. Asbury and her two sisters, Ms. Loot and Ms. Milacki, of $68,512.81. These amounts were debited from his account on July 17, 1998. Although petitioner did not identify the date when the funds were originally deposited into his account, we find his testimony regarding these funds credible. Accordingly, the total amount of these checks will be subtracted from respondent's adjustment for 1998.

D. Checks Held for Son and Daughter-in-Law

Petitioner also contests the inclusion in income of funds from the client trust account used to fund two checks issued to Jennifer E. and Thomas Asbury, his daughter-in-law and son, while they were in the process of selling their condominium and purchasing a home. Petitioner testified that he deposited his son's funds into the firm's client trust account to hold on his son's behalf, but stresses that he was not the recipient of the

funds.  First, he cites a check written to Gibraltar Title Services for $40,013.90 representing the closing costs for the purchase of his son and daughter-in-law's home.  Petitioner's firm's client trust account records show a copy of a check made payable to Gibraltar Title Services in this exact amount which was debited from the firm's account on May 24, 2000.

Next, petitioner cites a check written on June 8, 2000, for $1,000.  Petitioner's law firm's client trust account records show a copy of a check made payable to his son and daughter-in-law debited from his trust account on June 13, 2000, for the same amount.  Petitioner testified that this check was issued in order to cover a binder fee when his son and daughter-in-law were trying to sell their condominium.

Petitioner failed to produce any evidence verifying that he deposited his son's funds into his client trust account for safekeeping.  Therefore, we find he has not proven that deposits to the account were not his income.  Respondent's determination is sustained.

E.   Loan From Ms. Baum

Petitioner testified that he received a loan of $104,622.88 in July 2001 from Georgia Baum.  Ms. Baum held an account at Invest Financial Corp.  Ms. Baum's records show that she issued to the law firm's client trust account a check for $104,620.88 on July 24, 2001.  The firm's trust account records show a copy of a

check indicating that a deposit of $104,620.88 was credited to this account on July 25, 2001. Accordingly, we find petitioner's testimony concerning this transaction credible, and thus he has met his burden. The inclusion of this deposit in petitioner's income is in error.

F. Loan From Mr. Arbogast

Petitioner cites two loans from Gordon Arbogast of $80,000 on February 28, 2002, and another of $25,000 on May 23, 2002.

Petitioner could not produce any evidence to trace the transactions between Mr. Arbogast and himself. His account records do not correspond with his testimony and cannot be verified. Thus, he has not met his burden, and we sustain respondent's determination for these transactions.

G. Loan From Mr. Edleberg

Petitioner cites a loan from J.W. Edleberg of $60,000 in 2002. However, petitioner could not produce any evidence to trace the transactions between Mr. Edleberg and himself. His account records do not correspond with his testimony and cannot be verified. Thus, petitioner has not met his burden, and we sustain respondent's determination for this transaction.

H.    Loan From Ms. Smith

Petitioner cites a loan from Della Smith of $50,000 on March 1, 2002.  However, petitioner could not produce any evidence to trace the transactions between Ms. Smith and himself.  His account records do not correspond with his testimony and cannot be verified.  Thus, petitioner has not met his burden, and we sustain respondent's determination for this transaction.

I.    Moving Stipend From the City of Jacksonville

Petitioner cites a check from the city of Jacksonville paid to him as a moving stipend following the city's condemnation of his leased office building.  Petitioner testified that it was deposited into the firm's operating account on April 18, 2002. The firm's operating account records do reflect a deposit of $10,000 on April 18, 2002.  The records include a deposit slip but do not include a copy of the check or identify the payor.  As a result, petitioner has not met his burden to show this amount was not income in 2002, and we sustain respondent's determination.

III. Additional Deductions

Section 165(d) permits a taxpayer to deduct losses from wagering transactions "only to the extent of the gains from such transactions."  The taxpayer bears the burden of proving entitlement to such a deduction.  Schooler v. Commissioner, 68

T.C. 867, 869 (1977); see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

For all years at issue, respondent allowed the standard deduction. However, for years 1999, 2000, and 2002 respondent adjusted petitioner's income for gambling winnings, and for years 1999 and 2002 his gambling winnings exceeded the standard deduction. Petitioner's personal life and professional life were devastated by his gambling addiction, and his gambling losses were substantial. We hold that petitioner proved he sustained gambling losses and is entitled to additional itemized deductions for gambling losses for tax years 1999 and 2002 up to the amount of his gambling winnings in those years.

IV. Additions to Tax

   1. Section 6651(a)(2)--Failure To Pay

Section 6651(a)(2) imposes an addition to tax for failure to timely pay the amount of tax shown on a taxpayer's Federal income tax return. Cabirac v. Commissioner, 120 T.C. 163, 170 (2003).

Petitioner did not file valid returns for the years 1997 through 2002. Where the taxpayer did not file a valid return, the Commissioner, to satisfy his burden of production for the section 6651(a)(2) addition to tax, must introduce evidence that he prepared SFRs. Respondent prepared SFRs under section 6020(b) for the years in issue. SFRs made by the Secretary under section 6020(b) are treated as the returns filed by the taxpayer for

purposes of determining whether the section 6651(a)(2) addition to tax applies. Sec. 6651(g)(2); Wheeler v. Commissioner, 127 T.C. 200, 208-209 (2006), affd. 521 F.3d 1289 (10th Cir. 2008). Thus, respondent has established SFRs were prepared and we sustain respondent's determination of the failure to pay additions to tax pursuant to section 6651(a)(2).

2.  Section 6651(f)--Failure To File

Section 6651(f) imposes an addition to tax of up to 75 percent of the amount of tax required to be shown on the return when the failure to file a Federal income tax return timely is due to fraud.

In ascertaining whether petitioner's failure to file was fraudulent under section 6651(f), the Court considers the same elements that are considered in imposing the fraud penalty under section 6663 and former section 6653(b). Those two elements of fraud are:  (1) The existence of an underpayment, and (2) fraudulent intent with respect to some portion of the underpayment. In a case involving fraud, the Commissioner bears the burden of establishing fraud by "clear and convincing evidence". Sec. 7454(a); Rule 142(b); Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. T.C. Memo. 1985-63; Clayton v. Commissioner, 102 T.C. 632, 653 (1994); Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989).

Fraud is not to be imputed or presumed but rather must be established by some independent evidence of fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). Fraud may be established by surveying the taxpayer's entire course of conduct and drawing reasonable inferences therefrom. Spies v. United States, 317 U.S. 492, 499 (1943); Korecky v. Commissioner, supra at 1568.

Courts have relied on long-recognized badges of fraud in deciding whether to sustain the Commissioner's determinations with respect to the addition to tax for fraud. Although no single factor may be necessarily sufficient to establish fraud, the existence of several indicia may be persuasive circumstantial evidence of fraud. Spies v. United States, supra at 499-500; Conti v. Commissioner, 39 F.3d 658, 662 (6th Cir. 1994), affg. 99 T.C. 370 (1992) and T.C. Memo. 1992-616; Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992).

We find some of those badges of fraud to be present in this case. They include: Understatement of income; awareness of obligation to file returns, report income, and pay taxes; failure to make estimated tax payments; and engaging in illegal activity.

Petitioner failed to report substantial amounts of income from his law and tax practice for 6 years. This Court has held

that "consistent understatements of income in substantial amounts over a number of years by knowledgeable taxpayers, standing alone, are persuasive evidence of fraudulent intent to evade taxes." Otsuki v. Commissioner, supra at 108. Moreover, on this record we are satisfied that petitioner, with his status as a practicing tax attorney, was aware of his obligation to report income and to pay taxes on this income.

The record also demonstrates that petitioner failed to file returns for both himself and his law practice (with exception of a 1997 corporate return filed during the examination process) for the 6 consecutive years at issue.

Also, petitioner did conceal income and assets for the years at issue. Petitioner testified that he had used "my PA trust account illegally as, essentially as, a checking account. I would put funds in. I would take funds out." In addition, he testified "Did I fail to reveal or try to conceal assets? I mean, the record is here. * * * it's * * * more than what should have went through these accounts. * * * deposits were made, checks were written. There's no question about that."

In addition, petitioner failed to make any estimated tax payments or have any Federal income tax withheld with respect to his individual income tax liabilities for the years at issue. Petitioner's only payments for the years at issue are two $100 payments--one for tax year 1998 and the other for tax year 2000.

In addition, during the years at issue petitioner failed to timely pay employment taxes for the employees of his law practice.

Petitioner did engage in illegal activity. Petitioner was convicted of grand theft of client funds during or near the years at issue, sentenced to 5 years in prison, and ordered to pay $350,000 in restitution.

Petitioner's actions demonstrate a majority of the indicia of fraud considered by this Court. Respondent has met his burden of proof by providing clear and convincing evidence that petitioner not only established a pattern of failing to file income tax returns, but he also created trusts designed to conceal his income, thereby knowingly attempting to evade taxes. Thus, respondent has shown that at least some portion of the underpayment for each of the years in issue was due to fraud. Moreover, petitioner did not demonstrate that any portion of the underpayment was not attributable to fraud.

Further, the Court allowed petitioner the opportunity at the conclusion of trial to file a motion to reopen the record in the event he could provide additional documentation to support his position regarding the items he disputes. Petitioner failed to provide any further documentation in his defense. Therefore, petitioner has failed to show that any additional portions of respondent's determinations are incorrect. Accordingly, the

Court finds that petitioner is liable for an addition to tax under section 6651(f) for each of the years 1997 through 2002.

3. <u>Section 6654--Failure To Make Estimated Tax Payments</u>

Section 6654(a) imposes an addition to tax on an underpayment of estimated income tax. A taxpayer generally has an obligation to pay estimated income tax for a particular year only if he has a "required annual payment" for that year. Sec. 6654(d). The required annual payment is equal to the lesser of: (1) 90 percent of the tax shown on the individual's return for that year (or if no return is filed, 90 percent of the tax for such year), or (2) 100 percent of the tax shown on the return if the taxpayer filed a return for the immediately preceding tax year. Sec. 6654(d)(1)(B); <u>Wheeler v. Commissioner</u>, 127 T.C. at 210-211.

Because petitioner failed to file an individual Federal income tax return for any of the years at issue, the required payment is 90 percent of the tax due for each of the years 1998 through 2002. Petitioner failed to make any estimated tax payments or to have any Federal income tax withheld with respect to his individual income tax liabilities for the years at issue. Petitioner's only payments for any of the years at issue are two $100 payments--one for tax year 1998 and the other for tax year 2000.

Because the amounts as determined by respondent exceed the payments made, petitioner is liable for the addition to tax for failure to pay estimated tax under section 6654(a) for each of the years 1998 through 2002.[7]

V.  Conclusion

Despite his personal struggles and recent efforts to overcome these challenges, petitioner cannot escape his obligation to timely file and pay taxes.  Petitioner's experience as an attorney made him acutely aware of his obligation to accurately report income and submit the required tax filings and payments.  His background as a licensed attorney also gave him precise knowledge concerning the consequences of his failure to file.  His failure to make any effort to comply with known tax obligations over a period of 6 years is substantial and does not result from any good-faith misunderstanding.  We find his failures to file returns fraudulent as to the income tax underpayments we have found previously.

Consequently, we conclude that (1) petitioner is liable for deficiencies for the tax years 1997 through 2000; (2) petitioner is liable for additions to tax for fraudulent failure to file under section 6651(f) and for failure to pay under section 6651(a)(2) for the tax years 1997 through 2002, and (3)

---

[7]Respondent concedes the addition to tax for failure to make estimated tax payments for the tax year 1997.

petitioner is liable for additions to tax for failure to pay estimated tax under section 6654(a) for the years 1998 through 2002.

To reflect the foregoing and concessions by the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.